FREDERICK LEWISOHN ET AL. vs. EZEKIEL G. STODDARD
ET ALS.

* Third Judicial District, New Haven, Oct. Term, 1905, Jan. Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A ruling which sustains some of the points raised by demurrer but does not assume to pass on the others, should stand if the pleading demurred to is incurably defective in any point, whether the particular reasons which led the trial court to its conclusion were or were not sufficient.

Whether the filing of a later demurrer operates as a withdrawal of an earlier one, quære.

The plaintiffs were the sole creditors of a Missouri corporation which had been dissolved by vote of its stockholders, and sought to recover a balance alleged to be due them on a mortgage debt. The defendants, all but two of whom resided in this State, constituted all of its stockholders except one, who was represented by his administratrix, and all of them were also directors of the company at the time of its dissolution. The complaint alleged three causes of action: one in the nature of a creditor's bill for balances unpaid on shares of stock; one claiming the same balances by force of a Missouri statute expressly giving an action to creditors after the dissolution of the corporation; and one to compel some of the defendants to refund portions of the capital stock paid to

* See volume for January Term, 1906, 3d district, for records and briefs.

them, and for money damages.  Upon a demurrer to the complaint, mainly for misjoinder of causes of action and of parties, it was held : —

1. That the subject of the action was the indebtedness alleged to be due to the plaintiffs from the corporation, and its object the collection of such indebtedness.

2. That the subject-matter of controversy was the relation between these stockholders and directors on the one hand and the extinct corporation upon the other.

3. That any transactions which grew out of this subject-matter and tended or contributed to establish a duty upon the part of the defendants to the plaintiffs with respect to the payment of the latters' claim against the company, were transactions connected with the same subject of action.

4. That by the acquisition of their respective shares of stock, knowing that they were not fully paid for, each of the shareholders became liable, under the law of Missouri, to the corporation for the unpaid balance thereon, and was so liable at the time of its dissolution.

5. That all of the living stockholders and the personal representative of the deceased stockholder were proper parties, inasmuch as it was necessary, in order to do full justice, to state an account between the company and each stockholder, discriminating between the liabilities involved by the ownership of shares on which nothing, and those upon which something, had been paid.

6. That inasmuch as the corporation had been dissolved, and the directors—who by a statute of Missouri thereupon became trustees of the company and empowered to settle its affairs—had wrongfully refused to collect these unpaid stock subscriptions from themselves as stockholders, an action to enforce this liability was maintainable by the creditors of the corporation, who alone could profit by it.

7. That although a statute of Missouri permitted a creditor, whose debt was left unpaid on the dissolution, to sue an individual stockholder therefor, and gave the latter a right to maintain an action for contribution from the other stockholders, such statute did not displace the concurrent equitable remedy by a creditor's bill against the stockholders jointly.

8. That if in such a proceeding the plaintiffs' status as a creditor of the corporation was denied by the answer, a jury trial of that issue might be had if demanded.

9. That the failure of the complaint to allege that any claim for an unpaid stock subscription had been presented against the estate of the deceased stockholder, justified the dismissal of the action against his administratrix so far as it sought a recovery of a judgment for money against the decedent's estate on a personal obligation contracted by him; but that in view of the possible liability of his estate to respond to a call for contribution from the other

Lewisohn v. Stoddard.

defendants, in case of an adverse judgment against them, and for the purpose of stating the account incident thereto, the plaintiffs had a right to make the administratrix a codefendant.

10. That the nonappearance of the two nonresident defendants was not a valid objection to the maintenance of the suit, since more complete justice could be obtained here, where most of the shareholders lived, than in any other jurisdiction.

11. That the cause of action for wrongfully and fraudulently converting the assets of the corporation prior to its dissolution, could be supported, as against the demurrer filed by the administratrix, by treating it as a suit to recover the possession of specific property impressed with a trust in the execution of which the plaintiffs had the only beneficial interest.

12. That the provisions of the Missouri statute, making the directors trustees to wind up the affairs of the company after its dissolution, were merely declaratory of equitable principles, and no new cause of action was stated by the reference thereto in the complaint.

13. That the defendants were called upon to refund, not because they were shareholders and directors, but because they were alleged to have fraudulently appropriated property to which, or to the benefit of which, the plaintiffs had a superior title, to the extent of what was due them from the corporation at the time of its dissolution.

14. That the three causes of action arose out of several transactions, each of which was connected with the plaintiffs' demand against the company by force of obligations assumed under the laws of Missouri by shareholders and directors in a Missouri corporation; that these obligations compelled them to pay for their shares in full, if necessary to satisfy creditors of the corporation, and, if called for by a similar necessity, to refund any portions of the capital stock which they had wrongfully and fraudulently appropriated to their use.

15. That it was no objection to the suit that final judgment might be rendered, as to one cause of action, against some or all of the defendants severally, and on another, against some of them jointly; or that many separate and distinct issues might be closed between different parties, necessitating separate trials for their determinaation. Such incidents are common to suits in which both legal and equitable relief are demanded from numerous parties on account of different transactions connected with the same subject of action.

16. That each cause of action directly affected every party to the suit except the administratrix, and affected her remotely; and that there was no misjoinder of causes of action or of parties.

17. That such remedies as the plaintiffs had would not have been promoted by securing the appointment of a receiver in Missouri.

Lewisohn v. Stoddard.

While a corporation exists as a going concern it can call in and sue for unpaid stock subscriptions, without showing that the money is needed for creditors; after its dissolution, however, only enough can be collected to liquidate its debts.

Under the Practice Act a creditor's bill can be maintained without showing a previous judgment recovered in an action at law.

If a corporation refuses to collect unpaid subscriptions to its capital stock, a creditor may sue the subscribers and the corporation for the purpose of enforcing payment; and if the corporation has been dissolved, those who then represent it, under the law of the State which created it, may, under similar circumstances, be made defendants in its stead.

A corporation can be dissolved only by the State which created it.

Whether a suit can be maintained in this State by a foreign receiver, simply as such, *quære*.

The refusal of the trial court to pass upon every ground raised by a demurrer which is sustained for some of the causes alleged, furnishes no valid reason of appeal.

Argued Nov. 2d, 1905, and Jan. 18th, 1906—decided March 8th, 1906.

ACTION by citizens of New York as creditors of a Missouri corporation which had been dissolved, to collect their debt from certain of its former shareholders and directors; brought to the Superior Court in New Haven County, where demurrers to the complaint were sustained, *Case, J.*, and the action dismissed. *Error.*

There were nine defendants: One, Selden P. Spencer, a citizen of Missouri, and another, A. H. Grief, a citizen of Kansas; the others were citizens of Connecticut, one of whom was the administratrix of the estate of J. Yale Fairman, deceased, who was a citizen of Connecticut.

The complaint stated this case: The Pittsburg and St. Louis Zinc and Land Company was duly incorporated under the laws of Missouri in 1890, with a capital stock of $100,000, all of which was duly subscribed for and issued. When issued, it was not paid up otherwise than by a conveyance to the company of certain lands in Kansas worth not over $10,000. Selden P. Spencer was a subscriber for one share. Fairman and the other defendants, except the administratrix, soon after the organization of the company became the holders of all its capital stock; but as to how many shares each held

the plaintiffs had no knowledge. They acquired their shares knowing the facts above stated. Fairman held his shares when he died. The other defendants hold theirs still. Before March 2d, 1891, Fairman and the other defendants (except the administratrix) became directors of the company: Fairman being also president; Stoddard, vice president; Grief, treasurer; and DuBois, secretary. Fairman was a director until he died. The others from their original election till now have always continued to be directors. On March 2d, 1891, the company mortgaged said land, and certain improvements thereon, to Spencer, in trust for the security of an issue of its interest-bearing bonds to the amount of $15,000. In December, 1891, the defendants, as stockholders and directors, caused the capital stock of the company to be increased to $150,000, and the additional stock was issued to them and Fairman (though in what proportion the plaintiffs were ignorant), without any payment of any kind being made therefor. In April, 1892, Fairman and the defendants (except the administratrix), as directors of the company, caused a second mortgage to be executed by it of the same property to Spencer, in trust for the security of a second issue of its interest-bearing bonds to the amount of $25,000. Both issues of bonds were duly made. They are all negotiable, and the plaintiffs acquired title to them all for value received before their maturity, and are legal and bona fide holders of the same. In 1893 Fairman and the defendants (except the administratrix), as stockholders and directors of the company, again increased its capital stock to $200,000. The new stock was all issued to them, but in what proportions the plaintiffs are ignorant. It was and remains wholly unpaid. It 1896 the company sold its equity of redemption in said mortgaged property, and also all its assets of every description, to one McDonald, for the alleged consideration of $50,000. On February 8th, 1897, by a majority vote of Fairman and the other defendants (except the administratrix), as stockholders, at a stockholders' meeting, it was declared that said corporation was dissolved and no longer in existence. An affidavit of dissolution was

duly filed on February 16th, 1897, in the office of the Secretary of State of Missouri, and thereupon by the law of said State it became and was dissolved. The statutes of Missouri provided that " upon the dissolution of any corporation already created, or which may hereafter be created by the laws of this state, the president and directors or managers of the affairs of said corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of such corporation, with full power to settle the affairs, collect the outstanding debts and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them ; to sue for and recover such debts and property by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same ; and such trustees shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands." R. S. of Missouri, 1899, § 976. Fairman and the defendants (except the administratrix) became under the law of Missouri the trustees of the corporation, upon its said dissolution, for the purpose of winding up the business.

After the sale of the company's property to McDonald, all the moneys and other property received from said sale, and all the property of the company, amounting to a large sum, to wit, more than $75,000, were by vote of the defendants, except said administratrix, and said Fairman, as stockholders of said company, and of the directors of said company, wrongfully and fraudulently distributed by said directors among the defendants, except said administratrix and said Fairman ; and said company was by the payment of said dividends left wholly insolvent, and without any money or means to pay its creditors, and so remains to this day. Said moneys and property of said company distributed by said directors among the defendants and other stockholders, constituted a portion of the capital stock of the company. At the time of the formation of said company it was and still

remains the law of the State of Missouri that the capital stock of a corporation is a trust fund for the payment of the debts of the corporation, and creditors have a lien or right of priority of payment on it, in preference to any of the stockholders of the corporation. It was also the law of the State of Missouri at the time said company was formed, and is now, that it was the duty of the directors of a corporation to hold and manage said capital stock as a trust fund for the benefit of the creditors of the corporation. It was also at the time of the formation of the company and is now the law of the State of Missouri that if said capital stock is distributed to the stockholders of the corporation, leaving debts outstanding, said stockholders are liable to refund the capital stock so paid to them, and each of them, for the payment of outstanding debts. Fairman died in January, 1899, and the defendant Susie N. C. Fairman became the administratrix of his estate by appointment of the proper Court of Probate in Connecticut.

On or about October 1st, 1900, default was made in the payment of interest on all of said bonds, and thereafter, on March 1st, 1901, the principal of said first issue of bonds became due and payable, and default was made in payment thereof. On July 1st, 1901, a bill to foreclose both mortgages was filed by Allen W. Evarts, as successor to Selden P. Spencer, trustee, in the Circuit Court of the United States for the District of Kansas, third division. J. Yale Fairman, Selden P. Spencer and two others of the defendants in the present action were made defendants to the bill of foreclosure, under the description of Trustees of the Pittsburg and St. Louis Zinc and Land Company. Four others were joined, one of whom, Joseph L. Mattingly, was a citizen of Kansas, and two were citizens of Missouri. By a subsequent amendment, the other defendants in the present action (except A. H. Grief and the administratrix) were joined as defendants, under an allegation that they were on the board of directors when the company was dissolved, and described as trustees of that company. Under an *ex parte* order of the Circuit Court personal service was made on

some of the Connecticut defendants. in Connecticut by the
United States Marshal for the District of Connecticut, and
notice was given to the other defendants in said District
(except the administratrix) by publication in a Kansas news-
paper.    Subsequently, none of the defendants to the bill
having appeared, the bill was taken *pro confesso* and in
July, 1902, a decree of foreclosure and sale was duly entered,
the amount of the mortgage debt being found to be $46,182.72.
In August, 1902, the sale was had and $5,500 realized.   The
sale was confirmed by the court, and $40,682.72 of said debt
remains wholly unpaid.   There is no property whatsoever
remaining in the hands of said trustees, or belonging to said
company, except the claims against defendants as trustees
and stockholders.   The claim of the plaintiffs on these bonds
constitutes all the outstanding indebtedness of the company.
In the capital stock and moneys, so distributed as aforesaid
by the defendants in this case, were the proceeds of the
bonds upon which this suit is brought.   Said directors have
wholly refused to demand or collect from themselves and
the other defendants mentioned herein the amount due and
unpaid on their subscription to the stock, and they have neg-
lected and refused to demand or recover from said stock-
holders, or any of them, the property and capital stock so
distributed to them as aforesaid, and refuse so to do.   The
defendants conceal and withhold from the plaintiffs the
books, records and papers belonging to said company, and
to the directors as trustees of said company, so that the
plaintiffs are unable to state the amounts due from each of
said stockholders, respectively, and which would be made
applicable to the payment of said bonds, and are unable to
state the details of the facts hereinbefore alleged more fully
than they are herein alleged.   Defendants have the posses-
sion or control of all the books and papers of said corpora-
tion, and belonging to said trustees, containing the informa-
tion or records as to the assets of said corporation, and the
distribution or disposal of said assets, the names of the sub-
scribers to the stock, the amounts and nature of the payments
thereon, and the distribution or payment of dividends, and

of the property or capital stock of said company, and have in their possession and control all the facts concerning said matters. Plaintiffs are unable to prove their case, or to procure papers or information in regard to said matters from any other source, except from a disclosure and discovery by the defendants of all the books, papers and information concerning the property and management of the affairs of said corporation in their possession and control.

At the time of the incorporation of the company, the law of Missouri was, and ever since has been, as follows : " The stock or bonds of a corporation shall be issued only for money paid, labor done or money or property actually received. Any corporation may increase its capital stock or its bonded indebtedness with the consent of the persons holding the larger amount in value of the stock, which consent to such increase shall be obtained at a meeting of the shareholders, called for that purpose—sixty days' notice of the time and place of such meeting and of the amount of the proposed increase of stock or bonded indebtedness having been given as hereinafter provided ; but the shares of stock or bonds arising from such increase shall only be disposed of for money paid, labor done or money or property actually received." R. S. of Missouri, 1899, § 962. Said statute was at said time, and is now, so construed and interpreted by the highest court of the State of Missouri, and it is now the law of said State, that no stock shall be issued as paid up by any corporation unless money or labor or property at its reasonable market value to the amount of the par value of said stock be actually received therefor by such corporation : that where money, labor, or other property is not received in return for a subscription to said stock to the actual amount of the face value of said stock, the original subscribers and holders of said stock shall be legally liable for the full amount of the difference between the value of said labor or property so received and the face value of said stock, and that other persons subsequently becoming holders of said stock shall be so liable in case they know, or have the means of ascertaining, that said stock is not fully paid.

At all times heretofore mentioned there has been, and is now, a statute law of the State of Missouri, which is as follows: "If any company formed under this chapter dissolve, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the company in such suit; and if judgment be rendered and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of the dissolution, for the recovery of the proportion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from the property of each stockholder respectively; and if any number of stockholders, defendants in the case, shall not have property enough to satisfy his or their proportion of the execution, then the amount of the deficiency shall be divided equally amongst all the remaining stockholders, and collections made accordingly, deducting from the amount a sum in proportion to the amount of such stock owned by the plaintiff at the time the company dissolved."   R. S. of Missouri, 1899, § 987.

At the time of said division of the assets of said company, it was provided by the laws of Missouri as follows: "*Dividends may be declared, when:* Dividends of the profits made by the corporation may be declared by the trustees or directors thereof every six months, or oftener, as the directors may elect; but no such dividends shall be made and paid to the stockholders while such corporation is in an insolvent condition; and if the directors of any such corporation shall knowingly declare and pay any dividend when the corporation is insolvent, or any dividend the payment of which would render it insolvent, or which would diminish the amount of its capital stock, they shall be jointly and severally liable for all the debts of the corporation then existing, and for all that shall be thereafter contracted while they shall respectively continue in office: *Provided*, that if any of the directors shall object to the declaring of such dividend, or to the payment of the same, and shall, at any time before the time fixed for the payment thereof, file a certifi-

cate of their objections, in writing, with the clerk of the corporation and with the circuit clerk of the County, they shall be exempt from the said liability." R. S. of Missouri, 1899, § 1321.

The relief claimed was:—

1. The production by all and each of the defendants of all the books and papers of said corporation, and the books and papers of said trustees containing entries or information in their possession, or under their control.

2. The production of all books and papers or memoranda whatsoever in the hands of the defendants, or each or any of them, containing entries or memoranda or information concerning the amount subscribed by them, or each of them, to the stock of said company, and the amount or amounts paid by them, and each of them, upon said stock, and of what said payments consisted, whether of money, labor, or property, and the amounts of each; also of any moneys or property paid by said trustees to the stockholders.

3. That the defendants, and each of them, disclose the names of each and all of the stockholders of said corporation, the amount of stock held by each, and the amounts and nature of the payments made upon the stock of said corporation; also the amount of said stock unpaid, and the amount of moneys, or other assets, distributed or received by them, and each of them, from the stock, property, or capital of said company.

4. The appointment of a receiver, to collect and receive the amounts due on said stock from each of the defendants, and the amounts received by them, and each of them, to the capital stock of said company.

5. A decree that the defendants, and each of them, pay over to the plaintiffs such share of the claims of the plaintiffs as shall be proportioned to the amount of their unpaid stock, and of the amount so received as aforesaid from the property or capital stock of said company.

6. Judgment against the defendants for $70,000.

7. Judgment against each of the defendants for the proportion of said amount for which each is liable under said

provisions of statute above quoted from the Revised Statutes of Missouri, 1899, § 987.

The two nonresident defendants did not appear.

At the first term of the Superior Court the plaintiffs filed a written motion stating that DuBois was at one time a stockholder, officer, and director of the company, and as such had possession of all the company's books, records, and papers, and kept and made entries in said books, and has knowledge of the proceedings of the defendants on which this suit is brought; and asking that he be required to answer certain annexed interrogatories and produce certain specified documents. To this motion DuBois demurred. He and the other Connecticut defendants also, in February, 1904, severally demurred to the complaint, each specifying the same causes.

The plaintiffs afterward amended their complaint (these amendments appearing in the foregoing summary of it). Additional demurrers to the complaint were also filed by each of said defendants, and the original demurrer refiled at a date subsequent to the amendments. On this state of pleadings the cause was reserved for the advice of this court, which declined to hear it, and remanded the cause.

Amendments to the demurrers were then filed in the Superior Court, and a hearing had on all questions raised on demurrer before *George W. Wheeler, J.* The court ruled that misjoinder of parties was no ground for demurrer to the complaint, but made no other order or judgment than that the plaintiffs either amend their complaint by stating that they sued in behalf of all the creditors of the company, or strike out all the defendants but one ; and further that they amend so as to state each separate cause of action in a separate count. The plaintiffs thereupon moved for leave to amend by alleging that they sued on behalf of all the creditors, and also by adding five new counts, each of which consisted of a combination of certain specified paragraphs of the original complaint. Upon hearing this motion, the Superior Court (*Case, J.*), in view of the course taken by the plaintiffs, and inasmuch as both parties objected to the en-

forcement of the order previously made, suspended it until the demurrers already filed to the complaint should be disposed of; with leave to the defendants to amend such demurrers. Thereupon, in May, 1905, a "further and more specific demurrer" to the complaint was filed by each of the defendants. Each demurrer in each set of demurrers was similar to the others, except those filed by the administratrix, which contained some causes applicable only to her case.

The parties were then heard on all the issues raised, and judgment rendered (*Case,* *J.*) sustaining the original demurrers of February, 1904, as to the following reasons specified therein : (1) misjoinder of causes of action ; (2) the joinder of (a) an alleged cause of action by the plaintiffs as alleged creditors of the Pittsburg and St. Louis Zinc and Land Company, to recover some balance alleged to be remaining unpaid upon the shares of the capital stock of said company severally and respectively owned by each of the defendants, with the exception of Susie N. C. Fairman, administratrix, with (b) an alleged cause of action by the plaintiffs as such alleged creditors against some of the defendants as directors of said company, to recover against each of said alleged directors the whole amount of the plaintiffs' alleged claim against said company, with (c) an alleged cause of action by the plaintiffs as such alleged creditors against some of the defendants as trustees of said company to recover against each of said alleged trustees the whole amount of the plaintiffs' alleged claim against said company, with (d) an alleged cause of action by the plaintiffs as such alleged creditors against each of the said defendants, severally, as alleged stockholders of said company, to compel each stockholder to refund the amount of the alleged capital stock of said company claimed to have been paid to him ; (3) the joinder of an alleged cause of action against the defendant filing the demurrer, to recover a balance alleged to be due upon said stock alleged to be not paid for in full, with a cause of action against him as a director, and also with a cause of action against him as a trustee.

The order which had been suspended was also now re-

voked, on the ground that, as there was a fatal misjoinder of causes of action, it would be useless to restate them in separate counts. The demurrer to the motion for disclosure was also sustained, without prejudice to a renewal of the motion, should the complaint be so amended as to show a proper ground of recovery. No ruling was made as to issues presented by the amendments to demurrers or further demurrers filed after February, 1904, and no special ruling as to the special reasons of demurrer set forth by the administratrix.

Subsequently, the plaintiffs having refused to amend their complaint or file further pleadings, judgment was rendered that the complaint was insufficient and that the defendants who had demurred recover their costs.

The plaintiffs appealed, and the parties were heard in this court at its October term, 1905, when the following order was made :—

" It is ordered that the above entitled cause be continued, and that counsel be notified that the Court will hear them, if they desire, on the following questions : 1. If it should be held that the Superior Court erred in sustaining the demurrers filed on February 3d, 1904, for the causes specified in the judgment-file, was the judgment in favor of the defendants nevertheless a proper one, in view of other causes of demurrer stated on the record? 2. Should successive demurrers filed by the same party in said cause be considered as together constituting one demurrer; or is a demurrer to the complaint waived by filing another demurrer thereto? "

At the present term the parties were further heard, pursuant to said order.

*Talcott H. Russell* and *George E. Beers*, for the appellants (plaintiffs).

*Henry Stoddard, John K. Beach* and *John W. Bristol*, for the appellees (defendants).

BALDWIN, J. While the judgment appealed from is based

on a ruling which sustained only some of the points taken in one of the sets of demurrers, and did not assume to deal with any other points, it should stand, if in any point whatever the complaint was incurably defective, whether the particular reasons which led the trial court to its conclusion were or were not sufficient.

The parties in the court below, and also here, have treated all the papers filed by each defendant, whether entitled demurrers or amended demurrers, or further demurrers, as constituting a single demurrer. We have therefore no occasion to consider whether filing the latest set might not properly have been held to operate as a withdrawal of those previously filed.

The complaint is attacked on two main grounds : misjoinder of causes of action and misjoinder of parties.

Causes of action, both legal and equitable, may be united in the same complaint when they are presented as grounds of recovery "upon claims, whether in contract, or tort, or both, arising out of the same transaction or transactions connected with the same subject of action," provided they "affect all the parties to the action," and do not require different places of trial, and are "separately stated." General Statutes, § 613.

The subject of the plaintiffs' action is the balance remaining unpaid of an indebtedness originally due to them from the Pittsburg and St. Louis Zinc and Land Company, a Missouri corporation, which became extinct in 1897 ; all the defendants but one being then shareholders in and directors of the company, and that one being the administratrix of the estate of the only other person who then was a shareholder and director. The object of the action is to collect this balance from the defendants.

To show that the subject of action constitutes the foundation of a cause of action against the defendants, the plaintiffs rely on certain transactions which occurred in Missouri. The subject-matter of controversy is the relations between the defendants and the intestate whose estate one of them holds, on the one hand, and the extinct corporation, on the

other.   Any transactions which grew out of this subject-matter may be transactions connected with the same subject of action.   Practice Book, p. 15, § 7, Rules of Court, p. 45, § 150.   They are such if they tend or contribute to establish a duty on the part of the defendants to the plaintiffs with respect to the payment of the latter's claim against the company.   The plaintiffs had a right to state in their complaint any number of transactions of that nature, that is, of acts or agreements having some connection with each other, by reason of which their legal relations to the defendants were altered.   *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 561.

The original relations of the defendants (other than the administratrix) and Fairman, on the one side, to the corporation, on the other, arose from the acquisition by each of certain shares of its capital stock, and by all together of the entire capital stock, on which, as they knew, nothing had been paid in except by a conveyance of lands worth not over one tenth of that capital.   By and upon such acquisition each entered into contract relations with the corporation, the extent and obligation of which depended largely upon the laws of Missouri.   *Fish* v. *Smith*, 73 Conn. 377, 380, 84 Amer. State Rep. 161.

These laws then provided that where the face value of shares in such a corporation, even if issued as fully paid, had not been actually received by the corporation in money or money's worth, those accepting a transfer of them should thereby become legally liable for the full amount of the difference between such face value and any value in fact received, provided they knew that such shares were not fully paid.

Neither Fairman nor any of the other defendants ever paid to the company the difference between the face value of their shares and the value actually received by the company in payment of them.   These shareholders were therefore severally liable to the company for that difference, at the time of its dissolution.

Had a demand by the company upon any of them for pay-

ment of this sum been made and not complied with, the company could have sued the party thus in default, and brought as many suits as there were defaulting defendants, without showing that the money was needed to pay its debts. *Fish* v. *Smith,* 73 Conn. 377, 389. Upon its dissolution, a similar right of action passed by the laws of Missouri to Fairman and the other defendants (the administratrix excepted), as statutory trustees of the company, provided the money was needed to pay such debts. The obligation of shareholders in a corporation which is a going concern to respond to calls is not thus limited, because the directors may properly make them to raise means to promote its business or to acquire new property. The dissolution of a corporation puts an end to the corporate enterprise, and in winding up its affairs shareholders who have previously paid all that the company asked of them can only be required to pay more, when this is necessary for the protection of creditors.

When the Pittsburg and St. Louis Zinc and Land Company was dissolved, it was subject to a considerable bonded indebtedness, and had no assets (aside from such demands as it might be able to enforce for a recovery of part of its capital converted by its directors) except its right to collect from its shareholders what they were liable to pay under their original contract of subscription, or, in case of those claiming under a title acquired from an original subscriber, by force of the novation accomplished when they accepted a transfer of their shares. The amount remaining unpaid on the original capital was not less than $90,000. Additional shares had been issued to Fairman and the other defendants (except the administratrix) to the amount of $100,000, on which nothing had been paid. Of the $190,000 thus unpaid, between $40,000 and $50,000 would be required to satisfy the outstanding indebtedness. It therefore became the duty of those on whom the office of winding up the affairs of the extinct corporation devolved to collect that sum from the shareholders.

But for how much was each responsible? The holders

of the thousand shares constituting the original capital had already paid in ten per cent. of what was due upon it, but whether this had been paid by part of the shareholders only, or equally by all, does not appear. In order to do full justice between the parties on whom demands might be made, it would be necessary to state an account between the company and each, discriminating between the liabilities involved by the ownership of shares on which nothing had been paid, and those involved by the ownership of shares on which something had been paid. It would be necessary also to ascertain the precise amount of the indebtedness to be liquidated, and the creditors to whom it might be payable.

Had the company remained in existence, no such account could be made up in any judicial proceeding, looking to a judgment against a shareholder, to which the company was not a party. Its position would naturally be that of a plaintiff; but if it had wrongfully refused to bring such an action, when to bring it was necessary for the protection of creditors, the latter, under the practice in this State, could have instituted a suit, making the corporation a party defendant, and asking for judgment against it and, as ancillary relief, the appointment of a receiver to collect the amount so found due out of equitable assets. *Vail* v. *Hammond*, 60 Conn. 374, 383; *Barber* v. *International Co. of Mexico*, 73 id. 587, 593. To allege that they had recovered judgment against the company in Missouri would have been unnecessary and immaterial. *National Tube Works Co.* v. *Ballou*, 146 U. S. 517.

After the corporation went out of existence, it was equally necessary in any proceeding of such a nature, that its place, whether as plaintiff or defendant, should be filled by those entitled to represent it by legal succession. Whatever contractual obligations the shareholders had come under to the corporation, they had impliedly agreed, in case of its dissolution, to perform in favor of its statutory successors. The promise of each, in legal effect, under the laws of Missouri which governed his relation to the corporation, was to pay for his shares to the corporation or, in case of its dissolution

leaving debts unpaid and no other assets to meet them, to pay for them to those who at the time of the dissolution should be directors of the company. *Fish* v. *Smith*, 73 Conn. 377, 381, 382. The latter, therefore, would be proper plaintiffs in an action brought here to enforce a shareholder's obligation to pay in what he had promised upon his shares. And where, as is charged in the present case, the directors of such a company "wholly refused to demand or collect from themselves and the other defendants, mentioned herein, the amount due and unpaid on their subscription to the stock," they could properly be made defendants in an action by creditors to take benefit from this liability of the stockholders. This the plaintiffs, who are the only creditors, have done.

A statute of Missouri has also provided a special form of remedy in favor of creditors against shareholders. It is that if a corporation of the description of the Pittsburg and St. Louis Zinc and Land Company "dissolves, leaving debts unpaid," suits may be brought against any of its stockholders, without joining the corporation, and that if judgment goes against the defendant or defendants and is satisfied on execution, the latter may sue the other stockholders for contribution.

As construed by the Missouri courts, in view of certain provisions in the Constitution of that State, the remedy thus given is limited to a recovery of what, if anything, may remain unpaid upon the shares held by one who may be sued upon the statute. *Sears* v. *Missouri Mortgage Loan Co.*, 56 Mo. App. 122, 127 ; *Steam Stone Cutter Co.* v. *Scott*, 157 Mo. 520 ; *Shields* v. *Hobart*, 172 id. 491. The object of the legislature was not to create a new right, but to provide a new remedy by allowing any creditor to sue any stockholder, at law, in his own name. *Steam Stone Cutter Co.* v. *Scott*, 157 Mo. 520, 525. The right to resort to such an action did not displace the concurrent equitable remedy by a creditor's bill against the shareholders jointly. *Perry* v. *Turner*, 55 Mo. 418, 427 ; *Shields* v. *Hobart*, 172 id. 491, 510.

As a voluntary dissolution of such a corporation can always be accomplished, under the laws of Missouri, by vote of a certain number of the shareholders, whoever accepts a transfer of shares in it is charged with knowledge that such a dissolution may take place, and comes under an implied contractual duty to respond to those statutory obligations that may be consequent upon such an event.

This duty he owes to any creditor who may claim the benefit of it by bringing an action at law. He must also, under the general principles of equity, be ready to respond to any judgment creditor who may sue him with other shareholders, by a creditor's bill. The defendants, other than the administratrix, having contracted this duty must perform it, and are properly sued in this action, which is in the nature of a creditor's bill and demands a judgment for damages against all the defendants. The demand is, indeed, not for a judgment in favor of the corporation. None could be rendered in favor of a corporation which has been dissolved. It is not for a judgment in favor of the primary statutory successors of the corporation, for they are the very ones from whom the recovery is sought, and have wrongfully refused to ask for one. It is for a judgment in favor of the only parties who could profit by it, and of parties to whom the defendants impliedly agreed to account for their unpaid stock.

The main purpose of requiring the plaintiff in a creditor's bill to show that he had exhausted his remedy at law was to assure the determination of his status as a creditor by a jury, if a trial by jury should be claimed by any party adversely interested. Under our Practice Act an issue for such a purpose could be raised in this cause by the answer. *Lex non cogit ad impossibilia.* The plaintiffs could not ask for a judgment against a corporation which was extinct. Nor was what was due them owed by the statutory trustees, its successors. The directors were answerable, as such, only to the extent of the assets which they had received. The shareholders were answerable, as such, only to the extent of what might be unpaid upon the shares held by each. But to make out

any claim against any defendant, the plaintiffs were bound to show that the corporation was their debtor when it was dissolved, and their allegation of that fact, if traversed, would be the proper subject of a trial by jury. General Statutes, § 721 ; Public Acts of 1905, p. 284, Chap. 56, § 2.

The administratrix of the estate of J. Yale Fairman, a deceased stockholder and director, who was the president of the company, has been joined as a defendant. The title to his shares of stock passed to her, upon his death. His contractual obligation, incident to their ownership, was also one that could be enforced against her, as his personal representative. The right to demand its fulfilment constituted part of the equitable assets of the Pittsburg and St. Louis Zinc and Land Company. Her codefendants, as trustees of the company, might have presented a claim against the estate of J. Yale Fairman and brought suit, if necessary to enforce it, for whatever of the amount due upon shares left by him it was requisite to collect in order to satisfy the company's creditors. It was assigned by the administratrix for a reason of demurrer, that there is no allegation that such a claim was presented. While this was not among the reasons stated in her demurrer which the court below sustained, it justified the dismissal of the action as against her, so far as it sought a recovery of any judgment for money, against the estate of her husband, on a personal obligation contracted by him. *Grant* v. *Grant*, 63 Conn. 530, 546. The company having been dissolved before his death, no transfer of the shares from his name to that of the administratrix can have been made. She can, therefore, have come under no personal liability to the successors of the company. Nevertheless, the plaintiffs had the right to join her as a defendant. The cause of action now under consideration affects her, as administratrix, in view of questions that may arise as to the liability of the estate of J. Yale Fairman to respond to a call for contribution If the statute of Missouri is to be adopted as the governing rule, in administering justice in this State, and if judgment in this action should ultimately go against the defendants other than the

administratrix, they might claim that Fairman, by accepting the transfer of his shares, came under a contractual obligation to contribute to their relief, and that this obligation was enforceable against his personal representative. If a demand for such relief would constitute a claim against his estate in favor of any defendant to this action, it would be a claim accruing to him first, after the judgment against him was rendered and satisfied. It could, therefore, as one arising after the decease of the intestate, be exhibited as a claim against his estate at a future time. If, on the other hand, the right of contribution given by the Missouri statute is not to be regarded as determining the liability of the administratrix in the courts of this State, the general principles of equity lead to the conclusion that she should not have been absolutely dismissed without day. Had the directors, pursuant to their duty, brought suit, as statutory trustees, to collect from shareholders whose shares were not fully paid up what was needed to satisfy creditors, the present plaintiffs, being the sole creditors of the company, would have had an interest, and the only substantial and beneficial interest, in obtaining the judgment demanded by it. They might therefore properly have been joined in the writ as coplaintiffs. General Statutes, § 617. It would have been necessary for a complete determination or settlement of the questions involved in such a suit to make them defendants, if they were not made plaintiffs. General Statutes, § 618. The statutory trustees of the company having wrongfully refused to bring any such proceeding, the present action has been instituted. The same persons are parties to it who would have been the proper parties to one brought by the trustees; the only difference being that, as the trustees declined to sue as plaintiffs, they are sued as defendants. If, then, the relief asked by the plaintiffs from the administratrix had been that she pay the balance due upon the shares which she holds, to the statutory trustees of the company, and had the complaint alleged a proper exhibition of the claim, it would have stated a plain case against her. But whether there was or was not a case against her was a

matter of concern to all the other shareholders.    To work out
equity between them it was necessary, in some proceeding or
proceedings, to state an account in which it should be as-
certained who were shareholders, the number of shares owned
by each, the amount which had been paid in upon each
share, and the amount of the plaintiffs' demand against the
company after giving due credit for what they had received
from the avails of the mortgaged property under the fore-
closure sale.    It appears from the complaint that something
was paid in upon the original capital of the company, but it
does not appear whether this payment was made by all the
shareholders ratably, or only by one or more of them.    Part
of the shares held by the administratrix belonged to this
original capital.    It may be that they are fully paid up.    It
may be that they were not.    If fully paid up, there would
be the more for the other shareholders to pay.

For all these reasons it was proper, in order to state the ac-
count correctly and conclusively, to make her a defendant.
General Statutes, § 618.    Should she hereafter be called
upon by any of her codefendants for a contribution, it will
be for her advantage as well as theirs that such an account
could be stated in this proceeding.

The fact that the other defendants, as statutory trustees
of the company, have the legal title to whatever may be due
on such shares of the capital stock as have not been fully
paid, does not exonerate them, as shareholders, from paying
their indebtedness either to themselves as trustees, or to a
receiver for the use of the plaintiffs, or to the plaintiffs, as
may be deemed most equitable.    Each of them is under a
several liability to make such a payment to the extent of
any balance remaining unpaid upon his shares, so far as may
be requisite to discharge the plaintiffs' demand.    Each of
them is also, for the reasons already stated as applicable to
the administratrix, a proper party defendant, in view of the
necessity of making up an account which shall show pre-
cisely what may be equitably due from him, and which shall
be binding upon all.

That such an account ought, if reasonably practicable, to

be one that will be binding upon all, follows from the right of contribution that would arise under the general rules of equity in favor of some shareholders as against others, should any of them be adjudged to pay more than their equitable proportion. No one can be adjudged to pay more than that, when the judgment is founded on an accounting to which all are parties.

Two of the defendants in this action, one residing in Missouri and the other in Kansas, have not appeared. They have had an opportunity to be heard, but have declined to avail themselves of it. It is made a cause of demurrer by each of the other defendants " that other stockholders live in Missouri, and do not all live in Connecticut, and that said alleged cause of action involves the relation between said corporation and its stockholders, and that complete justice can only be done by the courts of the State of Missouri, where said corporation was created and organized." Had the plaintiffs sued in Missouri, they would have found but a single shareholder and director amenable to the process of the court. The corporation, having been dissolved, could not, of course, be made a party there or anywhere. This single shareholder would have had much more cause than the seven Connecticut shareholders now can show, on which to ground a complaint for taking an account in such a proceeding, to ascertain what he ought to pay. To a suit brought in Missouri only one of the parties adversely interested to the plaintiffs could be compelled to respond. To a suit brought in Connecticut all of them but two could be.

The United States are founded upon the principle of freedom of commercial intercourse between citizens of the several States. Corporations of one State are commonly admitted by comity to do business in others, and are often formed or controlled by citizens of others. When, as is true of most corporations with a considerable capital, some of the shareholders are citizens of the State granting the incorporation, and the rest are citizens of other States, no action to compel the discharge of shareholders' liabilities, for the benefit of creditors, can be brought in any forum before which

all parties in interest can be compelled to appear. Unless, then, such an action can be maintained in a State of which all the shareholders are not citizens and in which they cannot all be personally served with process, a fatal defect would exist in the American system of remedial procedure. The courts of the United States would be as powerless as those of a State; for their jurisdiction *in personam* is also, under the arrangement of federal judicial districts, measured by State lines.

The problem is not as to the proper forum for winding up the affairs of an existing corporation in proceedings looking to its dissolution. That can only be accomplished in the State from which it derived its franchise. *Hart* v. *Boston, H. & E. R. Co.*, 40 Conn. 524, 539. The question to be decided here is whether, the dissolution of the Pittsburg and St. Louis Zinc and Land Company having been already effected in the State of its incorporation, Connecticut shareholders can be compelled to pay what they agreed to pay upon the shares they hold, in order to raise the money necessary to satisfy the demands of creditors of the company. The law is well settled that a separate action at law would lie against each in the State where they belong, provided it were brought by one entitled to sue upon such an agreement. *Whitman* v. *Oxford National Bank*, 176 U. S. 559; *Fish* v. *Smith*, 73 Conn. 377. Instead of thus severing their demands and bringing seven suits against as many separate defendants, the plaintiffs have included all their causes of action in a single proceeding, in which both legal and equitable relief are sought. Each of the defendants thus joined would, if sued separately, have a right of contribution against every other of them, in case of his being compelled to pay more than, as between them, was his proper share. *Putnam* v. *Misochi*, 189 Mass. 421, 75 N. E. 956.

Each shareholder occupies, as to his fellow shareholders, the position of a cosurety. If he should be compelled to pay to the plaintiffs the entire balance due upon his shares, he would have the right incident to cosuretyship to resort to

any of the others who may have paid less, for partial indemnification.

It is therefore for the benefit of all of them that all have been joined in one action, in which equity can be worked out as between the defendants, as well as in favor of the plaintiffs.

Complete justice in this respect can be obtained nowhere, in a single suit, except by the voluntary appearance of all who may be named as defendants. More complete justice can be obtained in Connecticut than in any other jurisdiction, because most of the shareholders belong here. Under such circumstances, the plaintiffs were warranted in coming to this State for their remedy.

The complaint also sets up a distinct cause of action for a conversion, by J. Yale Fairman and all the defendants except the administratrix, of certain moneys and other property of the company, prior to its dissolution. These assets, it is alleged, amounting in value to over $75,000 and being part of the capital stock of the company, they as its shareholders and directors wrongfully and fraudulently distributed among themselves after December 31st, 1896, thereby leaving it wholly insolvent and without money or means to pay its creditors. As the bonds on which the plaintiffs' demand is founded were issued in 1891 and 1892, while Fairman and the other defendants, except the administratrix, were the directors of the company, a substantial fraud at common law is thus charged. All those participating in it would therefore have been jointly and severally liable to the company in an action of tort, at least to the extent of whatever might be needed to satisfy its creditors. An equitable remedy might also exist against them to compel the return of any specific property so fraudulently converted which could be traced into their possession.

The administratrix did not participate in the transaction, but the estate in her hands has presumably been enriched by its fruits. It may be that some of the identical assets so converted were held by Mr. Fairman at the time of his decease, and are capable of identification. If so, it may be

that she could be held as a trustee of them for those now representing the interests of the company. *Reed* v. *Copeland*, 50 Conn. 472, 488. As respects the grounds of demurrer, stated by her, the allegations of the complaint in these respects with their *prima fåcie* implications are sufficient to support the action.

Who can call the defendants to .account for this transaction, or for the fruits received from it? The company has been dissolved. Those of its statutory trustees who survive are themselves the wrong-doers. A court of equity, under these circumstances, cannot hesitate to allow the creditors who have been defrauded to claim its protection. By the general rules of chancery, they would be compelled first to exhaust their legal remedies. This prerequisite our Practice Act dispenses with, when they ask for a money judgment in their complaint, as well as for satisfaction out of equitable assets. Substantially such a claim for relief these plaintiffs have made, as has been already stated. Regarded in the nature of a creditor's bill for the recovery of assets wrongfully appropriated, the complaint presents a cause of action against all of the defendants except the administratrix; and as to her it may be supported, as against the demurrers which she has filed, as a suit to recover the possession of specific property impressed with a trust in the execution of which the plaintiffs have the only beneficial interest.

They have alleged that by the law of Missouri the directors of a corporation, after its dissolution, are jointly and severally responsible to its creditors and stockholders to the extent of its property and effects that shall have come into their hands as its trustees. It does not appear that any property passed to any of these defendants, as trustees. But considered with reference to their bearing on the present suit, these provisions of the statute in question are simply declaratory of equitable principles. The plaintiffs do not, if they could, rely upon them for support. It is enough for their purpose that the statute turned the directors into trustees and gave them power, as the legal successors of the cor-

poration, to sue and be sued as such. No new cause of action, therefore, is stated by the reference to it.

Nor is any stated by the reference made to the section, the rubric of which is "*Dividends may be declared, when.*" That concerns itself only with cash dividends of the ordinary kind, declared pro rata upon the shares of the capital stock. The conversion of the money and assets, effected after December 31st, 1896, as it is described in the complaint, was an extraordinary proceeding, by which both money and property other than money were distributed among the shareholders, and distributed without reference, so far as appears, to giving to each in proportion to his stock holdings.

Nor does the complaint set up any distinct cause of action on the "trust-fund" theory as it is received in Missouri. Whether if the directors had in good faith divided the assets of the corporation pro rata among the shareholders, believing that the property of the corporation which had been mortgaged to secure the plaintiffs' bonds was ample for the purpose, they could have been held liable to them if, years afterward, it turned out on foreclosure that the security was inadequate, is a question not so presented by the complaint that it can be raised on these demurrers. The distribution which they made is attacked as a wrongful and fraudulent one. That it was a misappropriation of a trust fund was a mere incident of the transaction, and did not change the nature of the cause of action.

It is stated in the demurrers that four causes of action are joined in the complaint: namely, one (a) for balances unpaid on shares of stock; one (b) against some of the defendants as directors of the company; one (c) against some of the defendants as trustees of the company; and one (d) to compel the defendants severally to refund portions of the capital stock paid to them respectively.

In our opinion, but three causes or action are set out, namely, one (a) in the nature of a creditor's bill, for balances unpaid on shares of stock; one (b) by creditors claiming the same balances by force of the Missouri statute ex-

pressly giving an action to creditors, after the dissolution of the corporation; and one (c) to compel some of the defendants to refund portions of the capital stock paid to them respectively in pursuance of a fraudulent combination, and for money damages. They are called upon to refund, not because they are shareholders and directors, but because they have fraudulently appropriated property to which, or to the benefit of which, the plaintiffs have a superior title, to the extent of what was due them from the corporation at the time of its dissolution. They are described as directors and trustees of the company both because this was part of the story of the case, and because, having, as directors, become such trustees, they are the successors and representatives of the company and necessary parties to any proceeding in which its indebtedness to the plaintiffs was a material circumstance. They were under no responsibility to the plaintiffs by reason of property coming into their hands, as trustees; for when the corporation was dissolved it had no assets in its possession.

No objection on the score of duplicity has been taken to the complaint. The defendants raise no question as to the propriety, if the causes of action were such as could be joined in one suit, of not stating them in separate counts.

The three causes of action which the plaintiffs present arose out of several transactions, each of which is connected with the plaintiffs' demand against the Pittsburg and St. Louis Zinc and Land Company by force of the obligations assumed under the laws of Missouri by shareholders and directors in a Missouri corporation. These obligations compel them to pay for their shares in full, if necessary to satisfy creditors of the corporation, and, if called for by a similar necessity, to refund any portions of the capital stock which they may have wrongfully appropriated to their own use.

The only ground for asserting that there is a misjoinder of causes of action, which is worthy of serious consideration, is the claim that each does not affect all the parties to the action, within the meaning of General Statutes, § 613.

Every party to the action except the administratrix is

directly affected by the claim for balances due on unpaid stock, and she, as has been already stated, is affected by it in so far as she is a proper party to stating the necessary account.

Every party to the action, except the administratrix, is also directly affected by the claims arising out of a refunding of unlawful and fraudulent appropriations of the capital stock, and her demurrer, as has been already shown, does not sufficiently challenge the allegations in that respect which the complaint contains as to her liability.

The demurrers further suggest a misjoinder of parties, on the ground that the action is brought on several and not joint liabilities; that the liability of each defendant is separate and distinct from that of any other; and that the liability of each who is a shareholder is different from his liability either as a director or as a trustee.

The subject of action, viewed in relation to the several transactions alleged, is one in which every party to the record is concerned. The causes of action themselves concern every party except the administratrix directly, and her remotely. Each of the defendants either has an interest in each cause of action adverse to the plaintiffs, or is one whose presence is necessary for a complete determination and settlement of a certain question involved in it, namely, the proper accounting to determine what has been paid on each share of the capital stock of the company. All the defendants, therefore, were properly joined. General Statutes, § 618; *Fairfield* v. *Southport National Bank*, 77 Conn. 423, 430. All except the administratrix were also rightly brought in as the representatives and legal successors of the corporation which, if in existence, would have manifestly been a proper party.

It is true that the final judgment may go as to one cause of action against some or all of the defendants severally, and on another cause of action against some of them jointly. It is true that many separate and distinct issues may be closed between different parties and that separate trials may perhaps become necessary to determine them. But these

are common incidents of suits where both legal and equitable relief are demanded from numerous parties, on account of different transactions connected with the same subject of action.

It is also made a cause of demurrer that the Pittsburg and St. Louis Zinc and Land Company is not a party; that no proceedings against it have been taken in Missouri; and that no receiver of it has been appointed there.

It could not be made a party after its dissolution. Until after that event there was nothing to call on the plaintiffs to institute any proceedings; for no default upon the bonds which they held accrued until 1900. Such remedies as they had would not have been promoted by procuring the appointment of a receiver in Missouri. Such an officer would not have been the statutory successor of the company, and so a proper party to sue shareholders as a substituted promisee upon their implied contractual engagements. He would have been regarded, out of Missouri, simply as an officer of the Missouri courts, and it is at least highly questionable whether, as such, he could have maintained an action here. See *Hale* v. *Allinson*, 188 U. S. 56; *Fish* v. *Smith*, 73 Conn. 377, 382.

There is nothing in the reason of appeal based upon the refusal of the Superior Court to pass upon every ground of every demurrer. If those which were sustained had been sufficient, the course taken and the judgment rendered would have been entirely proper. We have examined all the reasons assigned, simply to determine whether the judgment could not be supported on other grounds than those on which it was rested in the court below.

The other reasons of appeal become immaterial, in view of the error found in disposing of the main demurrers.

There is error in the judgment appealed from.

In this opinion the other judges concurred.