[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
The defendant has moved to strike the complaint on the basis that "the inclusion of three separate plaintiff's claims constitute the misjoinder of parties." The exclusive remedy for misjoinder of parties is by motion to strike. Zanoni v. Hudon, CT Page 277442 Conn. App. 70, 73 (1996). Such a motion can be decided only upon the pleadings, here the four corners of the complaint, and the moving party admits all well pleaded facts. RK Constructors, Inc.v. Fusco Corp. , 231 Conn. 381, 383 fn. 2 (1994). In fact, every favorable inference must be given to the complaint of the non-moving party. Amodio v. Cunningham, 182 Conn. 80, 82 (1980).
The court will now discuss the allegations made by each of the three plaintiffs in the complaint.
The facts relating to the plaintiff Zahedi, as stated in counts one through four of the complaint, are as follows: In 1998 Zahedi, whose "creed and ancestry includes native American heritage," was employed by the defendant as an assistant manager. Her manager, Jenny O'Brien, would tell female job applicants that there were no full-time jobs available and then hire men to fill available positions instead. O'Brien told Zahedi that "[w]e don't want anymore dumb women here." O'Brien and lane supervisor Dan Liebel spoke in Zahedi's presence about their hatred of Indians and women and stated that women and Indians are the dumbest people on earth.
Zahedi further alleges that, despite the fact that Zahedi was assistant manager, O'Brien would instruct other employees that they were to direct all questions to the two male lane supervisors, Liebel and Wayne Sasso. Although the male supervisors were permitted to take breaks whenever they wanted and to take sick leave, Zahedi was denied sick time and was sometimes given only one half-hour unpaid lunch break. Sasso would also pull Zahedi's hair, punch her, pinch her, rub his body against hers and, while she was seated, would step on her feet, put his hand on her shoulder, keep her from getting up and "stand with his private parts no more than six inches from her face."
According to the complaint, Zahedi told General Manager Bart Richter in July, 1998 that female employees were being harassed by Sasso, O'Brien and Liebel and nothing changed in response to their discussion. On August 6, 1998, after Zahedi submitted a written request to step down as assistant manager, she met with Richter and Jennifer Stefanik and detailed the harassment. Zahedi was fired by Richter and Stefanik later that day.
Count one alleges infliction of emotional distress. Counts two, three and four allege three different types of discriminatory employment practices under General Statutes § 46a-60(a). Count CT Page 2775 two alleges discharge and discrimination in terms, conditions or privileges of employment under § 46a-60(a)(1). Count three alleges discharge and discrimination because of opposition to discriminatory employment practices under § 46a-60(a)(4). Count four alleges sexual harassment under § 46a-60(a)(8).
The facts alleged in counts five through eight are as follows: Jenny Mundy is a woman of native American ancestry and creed, born on December 24, 1946. In or about January, 1998, Mundy began working for the defendant; O'Brien was her manager and her lane supervisors were Liebel and Sasso. O'Brien, Liebel and Sasso made statements that Mundy would not make it at her job because of her age. O'Brien and Liebel also made statements in her presence regarding their hatred for Indians and women and their opinion that Indians and women were the dumbest people on earth. Mundy was told that she was a stupid Indian and that she was too old for her job. Sasso touched her, grabbed her army, and while she was seated, stepped on her feet, put his hand on her shoulder, refused to let her get up and stood "with his private parts no more than six inches from her face." Mundy alleges that the actions of Liebel, Sasso and O'Brien amounted to a constructive discharge from her job. Counts five through eight are based on the same four legal theories as alleged by Zahedi in counts one through four.
Counts nine through twelve allege the following facts: Shirley Bennett was employed by the defendant as a safety inspector. In the presence of Bennett and customers, Liebel stated that all women are dummies. O'Brien and Liebel spoke of their hatred for women and Indians and of their opinion that women and Indians are the dumbest people on earth. Sasso pulled Bennett's hair, punched her, pinched her, rubbed his body against hers, and while she was seated, stepped on her feet, put his hand on her shoulder, kept her from getting up and stood "with his private parts no more than six inches from her face." Sasso also commented to Bennett that "he was going to marry her daughter and that if she was going to have any boyfriend it would be him." While male employees were permitted to take sick leave, Bennett was not allowed to. Bennett further alleges that despite complaining to O'Brien and Bart Richter, the conduct continued and that she was fired soon thereafter. Counts nine through twelve are based upon the same four legal theories as the other plaintiffs' counts.
When a claim of misjoinder is made, it is helpful to look to Practice Book § 9-4, which defines the circumstances under which CT Page 2776 plaintiffs may be joined in one action. That rule says that: "All persons may be joined in one action as plaintiffs in whom any right of relief in respect to or arising out of the same transaction or series of transactions is alleged to exist either jointly or severally, when if such persons brought separate actions, any common question of law or fact would arise; . . ." Older cases tended to give a broad definition to the term transaction. For example, in Craft Refrigerating Machine Co. v.Quinnipiac Brewing Co., 63 Conn. 551, 560 (1883), the court said: ". . . a transaction is something which has taken place whereby a cause of action has arisen. It must therefor consist of an act or agreement, or several acts or agreements, having some connection with each other in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered," id. pp. 560-561, cf. DeFilippi v. DeFilippi,23 Conn. Sup. 352 (1962). "Transaction" must be thus defined in terms of the operative facts that might prospectively give rise to a claim, whatever that claim may be.
Several cases discuss the concept of "transaction" and what is the "same transaction." In Fairfield Lumber Supply Co. v.Herman, 139 Conn. 141 (1952), the court held that five materialmen who furnished various materials for the construction of a house could join as plaintiffs pursuant to § 52-104 of the General Statutes, which Practice Book § 9.4 implements. The plaintiffs were different people, they furnished different material at different times. But the court held that the claims arouse out of the same transaction. The defendant at a meeting committed himself to pay all the plaintiffs because the original debtor had declared bankruptcy. That commitment was the basis of the suit against the defendant. At page 144, the court said:
 "It appears from the complaint in the present case that although the obligation of the defendant to each of the plaintiffs was several, his promise to all of them was made at the same time. It was made as a consequence of the bankruptcy of the general contractor and to accomplish the completion of the work which the plaintiffs had agreed with the general contractor to do. This rearrangement of the plaintiffs contracts for labor and materials was all one transaction."
Also, see Higgins v. C.L. P. Co., 129 Conn. 606, 608
(1952), where plaintiffs were properly joined, according to the court, because one was electrocuted and one was shocked by CT Page 2777 connecting high tension wires in the same incident, ef. Lewisohnv. Stoddard, 78 Conn. 575 (1906).
On the other hand, it was held in Myers v. Long,23 Conn. Sup. 93 (1961), that two plaintiffs were not permitted to join where there were two separate auto accidents; the second happened when a car ran into the wreckage of the first accident. The court held that there was not a single transaction within the meaning of the statute. The court also held no common question of law or fact was presented since there were "two plaintiffs involved in two different accidents in which more than one question must be litigated," id. p. 94.
This is a difficult area and federal decisions can give some guidance since the federal permissive joinder rule, Rule 20(a), is substantially similar to our Practice Book § 9.4. The federal rule imposes two requirements for joinder of plaintiffs. A right to relief must be asserted by each plaintiff relating to or arising out of the same transaction or occurrence and some question of law or fact common to all the parties will arise in the action. This rule is discussed in Federal Practice andProcedure 2d, Wright, Miller, Kane, Vol. 7, § 1653, pp. 377 et seq. Wright notes that the Advisory Committee noted no difference in import of the word "occurrence" from the word "transaction." Perhaps, unfortunately, he also noted that: "the courts seem to have adopted a case by case approach . . . as a result, it is necessary to extrapolate from the decided cases what is likely to qualify as a `single transaction or occurrence' in a particular case," id. p. 382. Wright does give some general guidance by saying the "logical relationship" test developed under Federal Rule 13(a) is consistent with the policy goals of Rule 20. This test would allow courts to promote judicial economy "by permitting all reasonably related claims for relief by . . . different parties to be tried in a single proceeding . . ." id. p. 383. But there are practical constraints on joinder; the test must be fact based and the "reasonably related" criterion must be based on a factual analysis. Thus, at page 385, Wright does offer the following guidance:
. . . "language in a number of decisions suggests that the courts are inclined to find that claims before them arose out of the same transaction or occurrence when the likelihood of overlapping proof and duplication of testimony indicates that separate trials would result in delay, inconvenience and added expense to the parties and the court." CT Page 2778
The court has reviewed the cases referred to by Wright and believes the following cases are illustrative of the federal approach. In Coffin v. South Carolina Dept. of Social Services,562 F. Sup. 579 (D.S.C., 1983), the court denied the defendants motion to sever the plaintiffs' claims. The defendant alleged the claims did not arise out of the same transaction or occurrence (Rule 20). In what was an age discrimination case, the defendant claimed some of the plaintiffs were affected by an organizational renewal started in 1978 and others by a reduction in force in 1981 due to cuts in federal funding, two discreet acts according to the defendant. The court, however, denied the motion to sever and noted that the plaintiffs were really alleging a plan of age discrimination that was intentional, id. p. 592. In other words, it appears that the defendant allegedly used two methods intentionally to discriminate on the basis of age so that the same transaction test was met. A similar case is Bolling, et alv. Mississippi Paper Co., 86 FRD 6 (ND Miss., 1979).
King v. Pepsi-Cola Metropolitan Bottling Co., 86 FRD 4 (1979), is an interesting case and takes a liberal view concerning the application of Rule 20(a) but shows that even with that view there are limits on the definition of "transaction" or whether a series of incidents can be considered the same transactions. In that case, the court denied severance of the plaintiffs in an employment discrimination case. The complaint alleged specific instances of discrimination against each of the named plaintiffs. The court said reasonably related claims for relief by or against different parties could be tried together and that "absolute identity of all events is unnecessary," id. p. 6.
But it is interesting to note that the court pointed out that the plaintiffs' complaints alleged specific instances of discrimination "as well as a general and pervasive corporatepolicy of discrimination by Pepsi against blacks. Thus, theallegations of a pervasive policy of discrimination would bringthe complaints of the individual plaintiffs under the rubric`same series of transactions,'" id. p. 6 (emphasis added). The court went on to note that in each case the same witnesses would testify as to conditions within the work unit. Each plaintiff claimed one individual played an integral role in carrying out the alleged discriminatory policy "so that each plaintiff would present evidence regarding this individual," id. p. 6, presumably to support the explicit claim of corporate policy. CT Page 2779 A case similar to King is Geir v. Educational Service Unit No.16, 144 FRD 680 (D. Neb., 1992). There, the court said permissive joinder of the claims of several handicapped students was appropriate under Rule 20(a). The students alleged physical, sexual and emotional abuse. The court said at pp. 688-89:
 "In this instance, although each of the seven plaintiffs may not have attended the school simultaneously or alleged assaults by the same school employees on the same dates, they nonetheless each assert a right to relief arising out of the same `series of transactions or occurrences' Specifically, each plaintiff has alleged they were injured by the same general policy or custom of ESU No. 16 school in condoning a pattern of physical, sexual and emotional abuse of students, and each plaintiff has alleged the defendants were aware of the physical, sexual and emotional assaults occurring at the school yet took no corrective action to stop the pattern of abuse. Thus, because plaintiffs each assert a right to relief arising out of the same series of transactions or occurrences, they meet the first requisite of joinder under Rule 20(a)." (Emphasis added.)
The court went on to say at the same page:
 "Additionally, there is a `question of law or fact common to all' of the plaintiffs. Although the alleged abuse may have taken different forms for different plaintiffs, questions concerning the existence of a policy of condoning such a pattern of abuse, and questions regarding whether defendants knowingly failed to take corrective action in the face of such abuse, present questions of fact common to all plaintiffs. Plaintiffs' right to relief depends upon the ability to demonstrate that each plaintiff was injured by an unconstitutional policy or custom of condoning physical, sexual and emotional abuse, and the knowing or deliberate failure to remedy the same. Because there is a question of law or fact common to all plaintiffs, I conclude the second requisite for joinder under Rule 20 is met."[1]
The King and Gier cases follow the reasoning of a leading case in this area. Mosley v. General Motors Corp. , 497 F.2d 1330 (CA. 8, 1974), applied Rule 20(a) in the same way. In that case, ten plaintiffs brought an action individually and as class representatives alleging their guaranteed rights were denied by defendant company and the union by reason of racial CT Page 2780 discrimination in employment practices. The court reversed the district court decision separating the causes of action and directing each plaintiff to bring a separate action. The court held the same transaction and series of transactions test was met because each plaintiff alleged "that he had been injured by the same general policy of discrimination on the part of General Motors and the union," id. p. 1333. The court cited United Statesv. Mississippi, 380 U.S. 128 (1965). There, the district court had concluded that the complaint improperly attempted to hold six county registrars jointly liable for what amounted to nothing more than individual torts committed by them against separate applicants. The Supreme Court reversed citing Rule 20(a) policy. The court noted that . . . "the complaint charged that the registrars had acted and were continuing to act as part of astatewide system designed to enforce the registration laws in a way that would inevitably deprive (African Americans) of their right to vote solely because of their color," id. at pp. 142-143 (emphasis added).
It is interesting to compare the King, Gier, Mosley andUnited States v. Mississippi cases with an age discrimination case where the court granted severance of the plaintiffs' claims and held that they were not properly joined in one suit, Graysonv. K-Mart, 849 F. Sup. 785 (N.D. Ga., 1994). The court found that the same transaction or occurrence test of Rule 20 was not met. There was an absence of a discreet program or procedure employed by the store chain that affected each plaintiff a causal link between common and identifiable wrongful act on the store chain's part and adverse action against each of the eleven plaintiffs. Also, the plaintiffs lived in four states, the stores where they worked were geographically remote from one another and the decisions to demote each plaintiff were made by different district and regional managers, id. pp. 788-789. Also, the court found no common question of law or fact existed between the plaintiffs' cases. The fact that the claims are based on the same general theory of law is not sufficient and each demotion of each plaintiff was a separate discreet act, id. p. 789, cf. Demboskiv. CSX Transportation, Inc., 157 FRD 28 (S.D. Miss., 1994), where severance was granted based on Rule 20 considerations. Four wrongful death claims were brought arising out of accidents at the same railroad crossing. But the court held the accidents did not arise out of the same transaction. Four separate accidents were involved involving four different railroad crews, at different times and dates, different cars, driver conduct and injuries and different defensive postures, id. pp 29-30. CT Page 2781
Looking at the cases, it appears that separate or distinct acts or occurrences alleged by different plaintiffs cannot qualify for permissive joinder even though they might have occurred at the same location and involved similar types of allegedly offensive, wrongful or discriminatory behavior. There must be some allegation of an interconnection between various acts complained of. For example, that they evidenced a common plan or design to perpetrate wrongful conduct. This is so because one of the primary purposes of permissive joinder is to achieve judicial economy by avoiding the presentation of overlapping evidence in a series of separate trials. Where there is an allegation of common plan or design against a corporate entity that must act through agents, then a legal framework is presented in the complaint to allow the benefits of permissive joinder to be apparent; the evidence of each plaintiff can be cumulatively considered to show common plan or design. In other words, whether some series of acts can be defined as arising out of the same transaction or series of transactions is arrived at as the end result of an analysis of the alleged operative facts for the purposes of determining whether permissive joinder would serve the purposes of judicial economy and the expeditious handling of cases.
The question is how all of this applies to the allegations of the complaint and the motion to strike now before the court. The problem here is that each plaintiff alleges facially unrelated disparate acts of oppressive and discriminatory behavior which occurred around the same time and were perpetrated by the same individuals. But nowhere do the plaintiffs allege in their separate claims that the three perpetrators were pursuing a company plan or policy of discriminatory conduct by the defendant company or even that the discriminatory acts were evidence of such a policy. This is so even though there is an allegation in two of the claims that at least one apparent "general" manager was approached regarding the discriminatory behavior but no action was taken to protect the workers. In a conclusory fashion, it is stated that the defendant "ratified" the discriminatory acts, but it is unclear whether that is just the elaboration of some agency theory as to the claim of a particular plaintiff. Since the necessity for exact pleading in this area is great, the court cannot use the favorable inference rubric for the pleadings of the non-moving party to speculate that this language, used by all plaintiffs, can be taken to infer a claim of company policy. The court by no means suggests that multiple claims of discrimination by different plaintiffs cannot be joined in one CT Page 2782 suit, but the appropriate theory of recovery must be set out to avoid a motion to strike for misjoinder. The cases permitting joinder in the federal system in discrimination cases set out the appropriate guidelines and are helpful in analyzing the joinder rules in our state. Those guidelines are not met here so the motion is granted.
Corradino, J.