P. MUSSER and others *vs.* JOHN McRAE and another.

May 14, 1888.

| 38 | 409 |
| 44 | 344 |
| 44 | 352 |
| 38 | 409 |
| 47 | 44 |
| 38 | 409 |
| 52 | 402 |

**Railway Land Grant—Indemnity Lands—When Title Vests.**—Under an act of congress granting to a state, to aid in the construction of a certain line of railroad, the odd-numbered sections for a prescribed width on each side of a line of road, and providing that if, when the line of road should be definitely fixed, any of the specified sections, or parts of sections, should have been sold, or rights of pre-emption attached thereto, an agent of the governor might, to make up such deficiencies, select, subject to the approval of the secretary of the interior, from the lands of the United States outside of said prescribed limits and within other prescribed limits, the title to specific lands between the two limits does not pass until selection and approval.

**Same—Effect of Patent by State.**—A state's patent of lands passes its title, but does not establish that it had title.

**Same—Statute as to Patent—Effect in another State.**—A law of a state making such title presumptive evidence of absolute title in fee in the grantee, is of no force in the courts of another state, so as to make the patent evidence that the title had passed from the United States to the state.

Appeal by defendants from an order of the district court for Washington county, *Crosby*, J., presiding, refusing a new trial.

*Fayette Marsh*, for appellants.

*Clapp & Macartney*, for respondents.

GILFILLAN, C. J. This is an action to recover the possession of certain saw-logs, which had been cut on lands in the state of Wis-

consin. The plaintiffs' title to the logs depended on their title to the lands on which they were cut. They claim title through acts of congress granting lands to the state of Wisconsin, to aid in the construction of certain railroads, and acts of the legislature of Wisconsin, granting them to the Chicago, St. Paul, Minneapolis & Omaha Railway Company, and a patent to the company, executed by the governor of the state, and a deed from the company to them. The first of said acts of congress was passed June 3, 1856, (11 U. S. St. at Large, 20,) and granted to the state the odd-numbered sections for six sections in width, on each side of the railroads, with the provision, usual in such land-grant acts, that if, when the line of railroad should be definitely fixed, the United States should have sold, or rights of pre-emption should have attached to, any such granted sections, or parts thereof, then, in lieu thereof, any agent to be appointed by the governor might select, subject to the approval of the secretary of the interior, from the lands of the United States nearest the tier of sections above specified, so much land, in alternate sections, or parts of sections, as should be equal to those sold or pre-empted within the six-mile limits; the lands so to be selected or located to be in no case further than 15 miles from the line of the railroad. An act of congress passed May 5, 1864, (13 U. S. St. at Large, 66,) increased the grant to the odd-numbered sections for 10 sections in width, on each side of the road, and increased to 20 miles on each side the width of the tract within which selections should be made, to make up for lands sold or pre-empted within the 10-section limit.

The defendants contend that these acts of congress were not grants *in præsenti,* except as to the lands lying within the 6 and 10-section limits. As the case is presented to us, and in the view we take of the evidence on the trial, it is entirely immaterial whether, under the acts, there is in that respect any difference between the two classes of lands,—that is, the lands in place, and those to be selected as deficiency or indemnity lands. For, conceding, as plaintiffs contend, that as to all the lands the acts were grants *in præsenti,* yet as to none of them did the acts, without anything else, pass the title to any specific lands. The title passed to lands to be afterwards located and ascertained. Whenever their location became certain, the title,

previously imperfect, acquired precision, and became attached to the land. *Schulenberg* v. *Harriman,* 21 Wall. 44. As to the lands in place, the title attached upon the definite location of the line of road. As soon as that was done, the acts pointed out the lands. As to those to be taken for deficiencies, it was necessary that something more than fixing the line of the road should be done : it was necessary that there should be a selection, and an approval of such selection by the secretary of the interior. Until that was done, the title granted did not attach to any lands outside of the 10-section limit. The lands on which the logs were cut were outside of the 10-section limit, and within the 20-mile limit. No selection of these particular lands was shown. It was not shown, therefore, that the title to them ever passed from the United States.

Plaintiffs claim that the patent from the governor, in connection with the acts of congress and of the state legislature, establishes that the title had passed from the United States to the state. We have seen what, under the acts of congress, was necessary to pass the title to specific lands from the United States. We know of no rule or principle of law upon which the declaration or act, however solemn, of the legislature or governor of the state, may stand in lieu of the performance of the things which the acts of congress made necessary to attach the title to any specific lands. There is a law of Wisconsin (Rev. St. Wis. § 4153, as amended by Laws 1880, *c.* 18) which, so far as bearing on this case, reads : "Every deed or patent which shall have been at any time executed and delivered by the governor, purporting to convey any lands granted to the state by the United States to aid in the construction of railroads, or military roads, or any swamp or overflowed lands, shall be received as presumptive evidence of the facts therein stated, and that the grantee named therein became vested thereby, at the date thereof, with an absolute title in fee to the lands therein described." The patent of a state, when regular on its face,—that is, when it is in proper form, is signed by the proper officer, and has the proper seal,—is everywhere evidence of the passage of the state's title to the land. The patent, like the deed of an individual, passes the title. But if the law we have quoted goes beyond this, and makes the patent presumptive evidence of the state's

title,—that, where the United States was the primary source of title, that title has passed to the state,—then it is only a rule of evidence prescribed for the courts of Wisconsin, and not binding upon courts of other states. It is undoubtedly competent for the legislature of any state to prescribe the order of proofs in its own courts, and what shall shift the burden of proof from one party to the other.

Order reversed, and new trial ordered.