The Town of Fairfield vs. The Southport National
Bank et al.

Third Judicial District, Bridgeport, October Term, 1904.
Torrance, C. J., Baldwin, Hamersley, Hall and Prentice, Js.

A complaint which states a cause of action against even one of several
   defendants ought not to be dismissed as to them all, upon the
   ground of a misjoinder of parties defendant. The proper course
   under such circumstances is merely to drop such of the defendants
   as may have been improperly made parties.
Where the respective rights of all the defendants depend substantially
   and for all practical purposes upon the decision of the same ques-
   tions of law and fact, there is no valid reason why they may not
   be tried and determined in one comprehensive proceeding, notwith-
   standing the interest of each defendant in the subject-matter of
   the controversy is a several and distinct rather than a joint or mu-
   tual interest. Such a procedure promotes speedy, complete and
   inexpensive justice, and is in harmony with the terms as well as
   the spirit of our Practice Act.
The plaintiff alleged that its selectmen borrowed money from time to
   time of the Southport National Bank and gave it twenty notes
   therefor; that these notes were paid in full, but were not canceled
   or surrendered, as the bank promised they should be, and through
   its fraudulent transfer subsequently turned up as alleged valid ob-
   ligations in the hands of several other banks, which were made
   parties defendant. The complaint asked for a determination of
   the rights of the respective defendants in and to the notes held
   by each of them, for their cancellation and delivery to the plain-
   tiff, and for a recovery of damages against the Southport National
   Bank. *Held* that the several banks had such an interest in the
   whole or in some part of the controversy, adverse to the plaintiff,
   as justified their joinder as defendants, and that therefore the trial
   court erred in dismissing the action upon the ground of a mis-
   joinder of parties and causes of action.

Argued November 3d—decided December 16th, 1904.

Suit to obtain the cancellation and delivery of several
promissory notes, also for an injunction and damages, brought
to the Superior Court in Fairfield County where a demurrer
to the complaint, filed by the Southport National Bank, was
sustained (*Roraback, J.*) and judgment rendered in its favor,

from which the plaintiff appealed. *Error, judgment set aside and cause remanded.*

*Daniel Davenport* and *Elmore S. Banks*, with whom was *William A. Redden*, for the appellant (plaintiff).

*Stiles Judson, Jr.*, for the appellee (the Southport National Bank).

TORRANCE, C. J. The complaint in this case alleges in substance the following facts : At divers times between January 3d, 1898, and February 7th, 1902, the selectmen of the plaintiff borrowed from the Southport National Bank various sums of money, aggregating nearly $60,000. When each separate amount was so borrowed, said selectmen executed and delivered to said bank an instrument in writing, purporting to be the negotiable promissory note of the plaintiff, for the amount then borrowed, payable to said bank or order, at five per cent. per annum. Twenty of such instruments were thus given. The plaintiff never authorized its selectmen to execute or deliver any of said instruments. On divers days before July 15th, 1902, said selectmen paid to said bank divers sums of money belonging to the plaintiff, in amount equal to the face value of all said instruments, and interest thereon to date of such payment; and said bank received said money in satisfaction and extinguishment of all said instruments, and of the indebtedness represented by them. At the time of such payments the bank represented to said selectmen that it was the holder of, and then had in its possession, all of said instruments, and promised to cancel and deliver the same to said selectmen, but it never did so. The selectmen believed said representation to be true, and made said payments in reliance upon such representation and promise. The Connecticut National Bank, claiming to be the *bona fide* holder for value, by indorsement from said Southport National Bank, of three of said instruments, and that the same are valid negotiable promissory notes of the plaintiff in its hands, has demanded payment thereof from

the plaintiff, and has brought suit therefor against the plaintiff. Under similar claims the Peoples Savings Bank asserts title to ten of said instruments; the City Savings Bank asserts title to five of them; and the Bridgeport Savings Bank asserts title to one of them; and each of said banks has demanded payment of the plaintiff of said instruments held by it, and has each brought suit separately against the plaintiff therefor. Of said claims of all of said banks, the plaintiff "has not sufficient information to form a belief"; and of all of them the plaintiff, prior to May 1st, 1903, had no notice or knowledge. The Southport National Bank claims to be the holder of one of said instruments, and has refused to give it up, although the plaintiff is entitled to and has demanded the same.

The plaintiff is informed and believes that interest upon all of said instruments, other than that held by the Southport National Bank and its receiver, has been paid by said Southport National Bank up to January 1st, 1903; and that said bank has made indorsements upon the one note held by it, purporting to be indorsements of payments of interest thereon to January 1st, 1903; but in fact no interest payments have been made upon any of said instruments by the plaintiff, or by its selectmen, since the payment made by said selectmen as hereinbefore stated. On or before May 20th, 1903, said Southport National Bank became insolvent, and the defendant Ellis S. Pepper was duly appointed and qualified as the receiver thereof. In August, 1903, " a claim in behalf of the plaintiff for the sum of $57,500, being the aggregate amount of the sums named " in said twenty written instruments, " together with interest thereon, was presented to said receiver," and was subsequently by him disallowed. Such, in substance, are the material facts alleged in the complaint.

The relief demanded is in substance as follows: (1) a decree determining what rights, if any, the several defendants have in or to the instruments claimed by them; (2) a decree determining in the case of each of the four banks claiming to hold instruments under the indorsements of the

Southport National Bank, to what sum, if any, they are entitled from the plaintiff, upon the instruments held by each respectively; (3) a decree requiring the Southport National Bank to pay to each of the other four banks such sum as shall be found to be due from it to each of them, upon the instruments aforesaid held by each of them, and further requiring said Southport National Bank to procure said instruments to be canceled and delivered to the plaintiff; (4) a decree requiring said last-named bank to cancel and deliver to the plaintiff the one of the twenty instruments aforesaid held by it; or (5) an order requiring the other four banks to deliver the written instruments set forth in the complaint, held by each of them, to the Southport National Bank, to be canceled by it and delivered up to the plaintiff; or (6) an order requiring said other four banks and the Southport National Bank to deliver to the plaintiff the instruments described in the complaint held by them respectively; or (7) a decree requiring said last-named bank to pay to the plaintiff $65,000 damages; (8) an injunction restraining each of said defendants from negotiating the notes aforesaid held by them, or from attempting to enforce the collection of them.

To this complaint and to the prayers for relief, the Southport National Bank and its receiver filed a demurrer. Two of the paragraphs of this demurrer the court sustained, and upon them, the plaintiff refusing to plead further, rendered judgment as on file. Under these two paragraphs of the demurrer the Southport National Bank claimed that the complaint was bad for misjoinder of parties and of causes of action; and the court sustained that claim and in effect dismissed the case because of such misjoinder. That claim is based upon the assumption that the complaint shows no such joint or mutual interest between the parties, in the subject-matter or controversy set forth in the complaint, as would, under the Practice Act, warrant the joinder of which the Southport National Bank complains.

The case presents two questions for decision: (1) whether, even if the complaint is bad for misjoinder as claimed, the

court erred in rendering judgment as it did ; and (2) whether
the complaint is bad for misjoinder as claimed.   The com-
plaint states a good cause of action against the Southport
National Bank, and makes it the principal defendant in the
case.   The other defendants were brought into the case in-
cidentally, in order to prevent a multiplicity of suits ; and
if dropped from the case their absence would not materially
affect the cause of action stated against the Southport Na-
tional Bank, and admitted by the demurrer.   Our statute
(General Statutes, § 622) provides that no action shall be de-
feated by the misjoinder of parties, and that "parties misjoined
may be dropped, by order of the court, at any stage of the
cause, as it may deem the interests of justice may require."
Had the other defendants been dropped, the misjoinder com-
plained of would have disappeared from the case.   Even
then if it be assumed that such a misjoinder existed, we
think that both the letter and the spirit of the Practice Act
required the parties misjoined to be dropped, and not that
the action stated against the Southport National Bank should
be defeated, as it was by the judgment rendered.   We think
the court, even upon its own assumption as to misjoinder,
erred in rendering judgment as it did.

The next question is whether, under our Practice Act, the
complaint is bad for misjoinder as claimed.   That act pro-
vides (General Statutes, § 618) as follows : " Any person may
be made a defendant who has or claims an interest in the con-
troversy, or any part thereof, adverse to the plaintiff, or
whom it is necessary, for a complete determination or settle-
ment of any question involved therein, to make a party."
If then, any of the defendants "has or claims an interest in
the controversy, or any part thereof, adverse to the plaintiff,"
such defendant was properly made a party in the cause.
What, then, is the " controversy " in this case, within the
meaning of the statute ?   That controversy relates to the
ownership of, the liability upon, and the right to the posses-
sion of, the twenty written instruments described in the
complaint, each purporting on its face to be a promissory
note made by the plaintiff.   These instruments may be said

to be the subject-matter of the controversy. Each of the defendants holds one or more of said notes, and they each make certain claims with regard to the said notes held by each, which are adverse to certain claims made by the plaintiff with regard to said notes. The plaintiff is one of the towns of this State, and with reference to each and all of said notes, it claims : (1) that it never executed them and is not legally bound by them ; (2) that they were paid in full, with its money, long before they came into the hands of the defendants, other than the Southport National Bank ; and (3) that all of said notes, held by said last-named defendants, are held by transfer from said Southport National Bank ; that said transfer was made by said bank in fraud of the plaintiff's rights ; and that this fraud may affect the rights of the defendants other than the Southport National Bank. The Southport National Bank denies all of these claims ; and the other defendants deny the first, and the other two also, so far as they affect or may affect the right of said defendants. The defendants thus have each an interest in having these claims of the plaintiff decided adversely to the plaintiff, and their interest is a pecuniary one. The word "controversy" is exceedingly broad and comprehensive, and for that reason not easily susceptible of any precise general definition ; and no attempt will be made here to give it any such definition. It is enough to say that we think that word, as applied to the present case, means the adverse claims of the parties with respect to the ownership of, liability upon, and possession of, said twenty notes set forth in the complaint. If this be so, it follows that each defendant, as between such defendant and the plaintiff, has an interest adverse to the plaintiff in the whole or in some part of the controversy, and thus in terms at least comes within the class who may be made defendants under the statute.

It must be conceded, however, as claimed by the Southport National Bank, that with respect to each other, the interest of the defendants in the controversy, or any part of it, is a several and not a joint or mutual one. It is true they each obtained the notes they respectively hold from a com-

mon source, the Southport National Bank; but there is no privity between them. They each obtained and hold their notes by a several title, by means of transactions with which the others had and have no concern whatever. The defendants, as between themselves, have no "joint" or "mutual" interest in the claims of each against the plaintiff, nor in the claims of the plaintiff against each; and because of this the Southport National Bank contends that they cannot properly be joined as defendants.

In the old equity practice it was undoubtedly the rule, at least in the case of "bills of peace," that a single plaintiff could not join numerous defendants in one suit unless there existed among them "a common right, a community of interest in the subject-matter of the controversy, or a common title from which all their separate claims and all the questions at issue arise; it is not enough that the claims of each individual being separate and distinct, there is a community of interest in the question of law or of fact involved, or in the kind and form of remedy demanded and obtained by or against each individual." 1 Pomeroy's Eq., § 268. The author quoted, however, says in the next section (§ 269) that this rule has long been abandoned, and then proceeds to state the matter as follows: "Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials of some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right,' or of 'interest in the subject-matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body."

The cases cited in the footnotes in the book above referred to amply bear out the author's statements. In the following cases the later rule thus announced has been recognized and applied. *Sheffield Waterworks* v. *Yeomans*, L. R. 2 Ch. App. 8; *New York & N. H. R. Co.* v. *Schuyler*, 17 N. Y. 592; *Carlton* v. *Newman*, 77 Me. 408; *Woodruff* v. *North Bloomfield G. M. Co.*, 8 Saw. (U. S. C. C.) 628; *Black* v. *Shreeve*, 3 Halst. Ch. (N. J. Eq.) 440; *McHenry* v. *Hazard*, 45 N. Y. 580; *Board of Supervisors* v. *Deyoe*, 77 id. 219; *Commonwealth* v. *Scott*, 112 Ky. 252, 23 Ky. L. Rep. 1488, 55 L. R. A. 597; *De Wolf* v. *Sprague Mfg. Co.*, 49 Conn. 282; *Evergreen Cemetery Asso.* v. *Beecher*, 53 id. 551.

We think the case at bar comes within this principle. The respective rights which the defendants claim against the plaintiff, under the notes held by each, depend substantially and for all practical purposes upon the decision of the same questions of law and of fact; and no good reason appears why these rights cannot be protected and enforced in one comprehensive proceeding. Of such a proceeding this court has said: " We think that it is in harmony with our practice in analogous proceedings and with the spirit of the Practice Act, and that it promotes speedy, complete, and inexpensive justice, without placing any obstruction in the way of any defendant in protecting his rights. " *Evergreen Cemetery Asso.* v. *Beecher*, 53 Conn. 551, 552.

The claim that in such cases each defendant is put to expense and inconvenience, by being required to attend proceedings in which he may have no interest, is without foundation in our practice; for one of the rules under the Practice Act provides against just such consequences. Rules of Court, p. 40, § 125. Under that rule, properly administered, each defendant carries only his own burden.

There is error in the judgment appealed from, and it is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.