JOHN HIRNING, Superintendent of Banks of South Dakota, Appellee, v. GEORGE H. HAMLIN, Administrator, Appellant.

RECEIVERS: Foreign Receiverships—Right to Maintain Action in this State. A foreign state officer as a foreign receiver of an insolvent foreign corporation, charged by the laws of his state with the mandatory duty of enforcing a "double" liability on the corporate stock of such corporation and of distributing the proceeds among the creditors, is vested with such title to the fund accruing under said liability as will enable him to maintain an action in this state against a resident holder of stock-in such corporation. (See Book of Anno., Vol. 1, Sec. 12716, Anno. 28 et seq.)

Headnote 1: 14 C. J. p. 997.

*Appeal from Poweshiek District Court.—D. W. HAMILTON, Judge.*

DECEMBER 15, 1925.

THE plaintiff, as superintendent of banks of the state of South Dakota, brings this action at law against George H. Hamlin, as administrator of the estate of Gilmore Robbins, deceased, to enforce a stockholder's liability incurred by decedent as owner of stock in the Wessington Springs State Bank, of Wessington Springs, South Dakota. The defendant's demurrer to the petition was overruled, and he appeals.—*Affirmed.*

*Frank Bechly* and *J. G. Shifflett,* for appellant.

*Hitchcock & Sickel, Beyer & Manly,* and *Clyde McFarlin,* for appellee.

MORLING, J.—The sufficiency of the facts to constitute, or the maturity of, the cause of action, or the propriety or form of the remedy sought, is not challenged. The only objection raised by the demurrer is that the plaintiff is a receiver appointed in a foreign jurisdiction, and of a foreign corporation, or is an officer of another state, not vested with title to the cause of action, and therefore not entitled to sue in Iowa.

The same person has not occupied the office of superintendent of banks of South Dakota during the entire time in question; but whether one person or another was acting at any particular time is immaterial, and the superintendent of banks, whether one person or another, will be referred to as the plaintiff.

The facts, so far as set out in the petition and relevant to the question before us, are as follows:

The Constitution of the state of South Dakota declares:

"The shareholders or stockholders of any banking corporation shall be held individually responsible and liable for all contracts, debts and engagements of such corporation to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock; and such individual liability shall continue for one year after any transfer or sale of stock by any stockholder or stockholders." Article XVIII, Section 3.

The statutes of the state contain the same provision, with a qualification not necessary to notice here. The following provisions also occur in the South Dakota statutes:

"Section 8925. Whenever it shall appear to the superintendent of banks that any bank or trust company subject to his supervision has violated its charter or any law of the state, or is conducting its business in an unsafe or unauthorized manner, or if the capital stock of any such bank or trust company is impaired, or if any such bank or trust company shall refuse to submit its books, papers and affairs to the inspection of any examiner, or if any officer thereof shall refuse to be examined upon oath touching the affairs of any such bank or trust company, or if any such bank or trust company shall suspend or refuse to make payment of its obligations, or if from any examination or report provided for by law the superintendent of banks shall have reason to conclude that such bank or trust company is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe and inexpedient for it to continue business, or if any such bank or trust company shall neglect or refuse to observe any order of the superintendent of banks specified in the preceding section, such superintendent may forthwith take possession of the property

and business of such bank or trust company and retain such possession until such bank or trust company shall resume business or its affairs be finally liquidated.

"Section 8926. Whenever any bank or trust company of whose property and business the superintendent of banks has taken possession deems itself aggrieved thereby, it may, at any time within ten ·days thereafter, apply to the circuit court of the county in which such bank or trust company is located to enjoin further proceedings; and after citing the superintendent of banks to show cause why further proceedings should not be enjoined and hearing the allegations and proofs of the parties and determining the facts, such court may upon the merits dismiss such application or enjoin the superintendent of banks from further proceedings, and · direct him to surrender such business and property to such bank or trust company. All proceedings by any· bank or trust company to enjoin the superintendent of banks in the discharge of his duty shall be had in the circuit court of the county in which such bank or trust company is located.

"Section 8937. If at any time after the closing of any bank or trust company, it shall appear to the superintendent of banks that the assets of such institution are insufficient to pay its liabilities, it shall be the duty of such superintendent to immediately institute proceedings against its stockholders for the collection of an amount, not exceeding the legal liability of such stockholders, sufficient to discharge the liabilities of such bank or trust company. All sums so collected shall be deemed a part of the assets of such bank or trust company, and be distributed pro rata to the creditors thereof, in the same manner as other assets. No action by any creditor against any stockholder of any bank or trust company to enforce his liability shall be maintained, unless it shall appear to the satisfaction of the court that the superintendent of banks has refused to commence action as herein provided."

The Wessington Springs State Bank was incorporated under these laws, and capitalized at $25,000. The decedent, at the time of his death (the date of which is not shown), was the owner of 60 shares of the stock, of the par value of $100 per share. This stock is now a part of his estate.

The petition contains the following allegations, viz.:

"That, on and prior to the 6th day of March, 1924, it appeared to the said superintendent of banks of the state of South Dakota that the business of said bank was being conducted in an unsafe and unauthorized manner; that its capital stock was impaired; that said bank had suspended and refused to make payment of its obligations; and that the said bank was in an unsound and unsafe condition to transact the banking business for which it was organized; and that it was unsafe and inexpedient for said bank to continue business: and that therefore, pursuant to the said laws and the authority vested in him, the said superintendent of banks of the state of South Dakota did, on the 6th day of March, 1924, take possession of the business and property of said bank, and has retained such possession for the purpose of liquidation and for the purpose of administering the affairs of said bank at all times since."

It is further set out in the petition that, although more than ten days have elapsed since the superintendent took possession, no one has made any application for injunction, and the officers and stockholders are therefore estopped from questioning the rightfulness of the possession and liquidation by the superintendent, or his right to recover under the constitutional provision mentioned. It is further alleged:

"That it has been made to appear to the said superintendent of banks, and it has appeared to him at all times since the closing of said bank, that the assets of said bank were and are insufficient to pay its liabilities; that many of the assets and other property of said bank are of little or no value; that many of the persons owing said bank are insolvent, and have no property exempt from levy and sale on execution; that the assets of said bank are insufficient in the amount of fifty thousand dollars ($50,000.00) or more, to pay its liabilities."

A chancery receiver, merely as such, is the creature or arm of the court appointing him. Having no other authority than that which follows from the fact of his appointment, he is, in the exercise of his authority (except by comity), subject to the same territorial limitation as that of the jurisdiction of the court from which he derives his authority. *Bernheimer v. Converse,* 206 U. S. 516, 534; *Booth v. Clark,* 17 How. (U. S.) 321; *Hale v.*

*Allinson*, 188 U. S. 56; *Great Western Mining & Mfg. Co. v. Harris*, 198 U. S. 561; *Wyman v. Eaton*, 107 Iowa 214; *Malone v. Averill*, 166 Iowa 78. The defendant rests his demurrer upon this principle, but it is not applicable.

The state of South Dakota, in the exercise of its sovereign right of creating and regulating banking corporations, might undoubtedly annex to the privileges granted such terms and conditions as it saw fit, and by the act of taking stock, the stockholder impliedly assented to them. Such terms and conditions thereby became obligatory upon the stockholder, contractual in their nature, and enforcible as such in the courts of other states. *Bernheimer v. Converse*, 206 U. S. 516, 529; *Lowry v. Inman*, 46 N. Y. 119; *Howarth v. Angle*, 162 N. Y. 179 (56 N. E. 489, 492); *Fish v. Smith*, 73 Conn. 377 (47 Atl. 711, 713); *Stoddard v. Lum*, 159 N. Y. 265 (53 N. E. 1108, 1110). His provisional liability to creditors was just as obligatory as his original liability to pay for his stock. *Howarth v. Angle*, 162 N. Y. 179 (56 N. E. 489, 492); *Stoddard v. Lum*, 159 N. Y. 265 (53 N. E. 1108).

The stockholder impliedly agreed that the state superintendent of banking might determine provisionally, and in the first instance (subject to review by the court), whether conditions existed such as required him to take over the property and business of the bank for liquidation. Under conditions admitted by the demurrer to exist, the stockholder had agreed further that it would be the duty of the superintendent of banks to sue for his pro rata of a sufficient amount, not exceeding in the total the par value of the stock, to discharge the liabilities of the bank. In substance, he agreed to the fixing by the superintendent of banks of the amount of an assessment, and to his collecting it. The law is one not merely authorizing the court to appoint a receiver to collect and distribute the assets; it is one peremptorily commanding the superintendent of banks to make and collect the assessment. The liability of the stockholders is for all of the debts. The sums collected are to be distributed pro rata to the creditors in the same manner as other assets. The superintendent of banking is required to make the collection, and empowered to sue. The fund collected necessarily comes into his possession, and is a trust fund for the

creditors. He is the trustee or quasi assignee of the fund, and we think has sufficient title to enable him to maintain the action in the courts of this state. *Converse v. Hamilton*, 224 U. S. 243; *Bernheimer v. Converse*, 206 U. S. 516. It would be intolerable that the rights and obligations of stockholders of corporations should vary according to or depend upon the *lex fori* or the *lex domicilii*. It is well settled, therefore, that the law of the state creating the corporation controls in the determination of their rights and obligations, though not necessarily the remedy. *Modern Woodmen v. Mixer*, 267 U. S. 544; *Supreme Council of Royal Arcanum v. Green*, 237 U. S. 531.

Defendant urges that there have been no legal proceedings in South Dakota that would operate to vest title to the assets in the receiver, or that would authorize him to commence suit. The statute does not require such proceedings, and the validity or sufficiency of the statute is not here in question. No further question is presented.

The judgment is—*Affirmed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.

VERMILION, J., takes no part.