JOSEPH A. BRODERICK, SUPERINTENDENT OF BANKS, STATE OF NEW YORK, *vs.* MARY MCGUIRE ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 4th—decided July 27th, 1934.

*Frank Rich* and *George Dimenstein,* with whom, on the brief, were *Arthur Ofner* and *Carl J. Austrain* of New York, for the appellant (plaintiff).

*Benjamin Slade, Joseph Shelnitz* and *Alfred C. Baldwin, Jr.,* for the appellee (named defendant).

MALTBIE, C. J.  This is an action brought by the superintendent of banks of the State of New York, who had taken possession of the business and property of The Bank of United States, a New York banking corporation, under authority of the statutes of New York, to recover from the defendants, stockholders in the bank, assessments made by him, as necessary to satisfy the claims of creditors of the corporation.  The writ named some hundred defendants and the complaint claimed damages from each defendant severally in an amount varying from $250 to $650.  The trial court sustained a demurrer to the complaint filed by one of the defendants.  Thereafter, in order to simplify the case for presentation to this court, a substitute demurrer was filed designed to raise all questions as to the legal sufficiency of the complaint advanced by any of the defendants.  The trial court then ruled specifically upon the various grounds stated, sustaining some and overruling others.  In so far as the grounds of demurrer were sustained the plaintiff has appealed to this court; and the defendant has brought before us by bill of exceptions the decision of the trial court in so far as it overruled certain of the grounds. Aside from matters of procedure, the underlying issue is as to the right of the plaintiff to enforce in the courts of this State payment of the assessments made by him against the defendants, stockholders in a banking corporation of which he has taken possession, under the provisions of the statutes of New York.

The demurrer does not raise any question as to the legality of the acts of the plaintiff in taking possession of the business and property of the bank, nor is it claimed that, in making the assessments, he did not

proceed strictly in accordance with the procedure established by the New York statutes. It is not, therefore, necessary to refer in detail to the provisions of the statutes governing these matters. Section 7 of Article VIII of the Constitution of New York provides that the stockholders of every corporation and joint-stock association for banking purposes, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind. The provisions of the statutes relevant to the issues before us are, briefly, as follows: Whenever the superintendent of banks has taken possession of the property and business of a banking corporation, has duly notified creditors to present claims and the time within which such claims are to be presented has expired, and he has determined from his examination of the affairs of the bank that the reasonable value of its assets is not sufficient to pay its creditors in full, he may enforce the individual liability of stockholders. He is required to make written demand upon each stockholder by registered letter stating the total amount assessed against the stockholders and the equal and pro rata share assessed against each for each share of stock he owns. If the assessment is not paid within the time fixed in the notice, the superintendent is specifically given "a cause of action," in his name as superintendent, against each stockholder, either severally or jointly with others, to recover the amount of the assessment with interest. The statutes provide that the written statement of the superintendent, under his hand and seal of office, reciting his determination to enforce the individual liability, or any part thereof, of such stockholders, and setting forth the value of the assets of the corporation and the liabilities thereof, as determined by him after exam-

ination and investigation, shall be presumptive evidence of the facts stated. When the superintendent has taken possession of a bank, all actions to enforce the liability of stockholders to the assessment must be taken and prosecuted in his name, unless after request he refuses to act. Banking Law of New York, §§ 57, 72, 79, 80. If, after the legal demands of creditors have been satisfied, any assets remain in his hands, they are required to be distributed, under order of court, among the stockholders in proportion to their stock holdings. Banking Law, § 79; *Broderick* v. *Aaron*, 264 N. Y. Sup. 15, 18.

The right of a superintendent of banks to levy such an assessment as that here involved, and if it is not paid, to bring an action to enforce it has been upheld by the courts of New York. *Van Tuyl* v. *Scharmann*, 208 N. Y. 53, 101 N. E. 779; *Van Tuyl* v. *Sullivan*, 173 App. Div. (N. Y.) 391, affirmed 217 N. Y. 691, 112 N. E. 1078; *Skinner* v. *Schwab*, 188 App. Div. (N. Y.) 457, affirmed 229 N. Y. 549, 129 N. E. 910; *Van Tuyl* v. *Robin*, 80 Misc. (N. Y.) 360, affirmed 211 N. Y. 540, 105 N. E. 1101; *Broderick* v. *Adamson*, 265 N. Y. Sup. 804. One ground of demurrer, however, attacks the statute as involving an unconstitutional delegation of judicial power to an administrative officer. In the *Matter of Union Bank of Brooklyn*, 176 App. Div. (N. Y.) 477, 483, it is said: "As I have said, the liquidation contemplated and authorized by the banking law is not the result of any action or proceeding in court. Liquidation does not necessarily require nor imply judicial proceedings. The appointment of an officer to act in liquidation outside of judicial proceedings or apart from the judicial branch of the government, is not open to objection as vesting him with judicial power." See *Isaac* v. *Marcus*, 258 N. Y. 257, 264, 179 N. E. 487. In *Van Tuyl* v. *Scharmann*, supra,

the similarity of the scheme of the statute to that provided by the United States statutes in connection with the liquidation of national banks was pointed out; and the provisions of the Federal law have been repeatedly sustained by the United States Supreme Court. *Kennedy* v. *Gibson,* 75 U. S. (8 Wall.) 498, 505; *Casey* v. *Galli,* 94 U. S. 673, 677; *Crescent City National Bank* v. *Case,* 99 U. S. 628, 634; *Bushnell* v. *Leland,* 164 U. S. 684, 17 Sup. Ct. 209; *In re Chetwood,* 165 U. S. 443, 458, 17 Sup. Ct. 385. In the *Bushnell* case, page 685, the very objection now made to the New York statute was expressly overruled as applied to the powers vested in the comptroller of the currency to enforce the liability of stockholders. While perhaps the precise objection now made to the New York statute has never been definitely ruled upon by the courts of that State, we entertain no doubt that, if presented, they would hold valid under the Constitution of that State the vesting in the superintendent of banks of the power to determine the necessity and the amount of assessment upon stockholders of a bank, of the business and affairs of which he has taken possession, in order to meet the claims of creditors. *Broderick* v. *Adamson,* 265 N. Y. Sup. 804; *Broderick* v. *Betco Corporation,* 267 N. Y. Sup. 139, 142. See *Harris* v. *Briggs,* 264 Fed. 726; *Hanson* v. *Soderberg,* 105 Wash. 255, 177 Pac. 827; *Tabler* v. *Higginbotham,* 110 W. Va. 9, 156 S. E. 751; *Davis* v. *Moore,* 130 Ark. 128, 197 S. W. 295.

The principal question raised by the defendant is that the plaintiff should not be permitted to sue in our courts to enforce the assessment against stockholders resident in Connecticut. While a superintendent of banks, administering the affairs of a bank of which he has taken possession, occupies a position in many respects analogous to that of a receiver appointed by a

court, he is in reality an administrative officer. *Isaac v. Marcus,* 258 N. Y. 257, 264, 179 N. E. 437; *Matter of Broderick,* 235 App. Div. (N. Y.) 281, 282; *Van Tuyl* v. *Sullivan,* 173 App. Div. (N. Y.) 391, 396, affirmed 217 N. Y. 691, 112 N. E. 1078; *Matter of Union Bank of Brooklyn,* 176 App. Div. (N. Y.) 477, 482. In *Clark* v. *Willard,* 292 U. S. 112, 122, 54 Sup. Ct. 615, 620, 78 L. Ed. 743, 749, the position of a similar officer of the State of Iowa was described as being "more closely analogous to that of a trustee under a voluntary general assignment for the benefit of creditors . . . than to one deriving title under a decree in insolvency proceedings, . . . yet it is stronger than either in that for many purposes the corporation under which he claims has passed out of existence." By force of the statutes of New York the plaintiff has at least an equitable title to the property of the bank. *Lafayette Trust Co.* v. *Beggs,* 213 N. Y. 280, 287, 107 N. E. 644; *Matter of Broderick,* supra. The right to levy an assessment for the benefit of creditors of the bank is not under the statute a right of the corporation, but is one which by express statutory provision is vested in the superintendent of banks for the benefit of creditors. He occupies, by force of the statutes, very much the same position with reference to the enforcement of assessments as did a receiver of an insolvent bank previously to the change in the statutes made in 1908; *Matter of Union Bank of Brooklyn,* 204 N. Y. 313, 316, 97 N. E. 737; he is just as much a quasi or statutory assignee of the right to enforce the obligations of stockholders as is a receiver seeking to enforce a similar obligation. Ever since the decision of *Bernheimer* v. *Converse,* 206 U. S. 516, 27 Sup. Ct. 755, and *Converse* v. *Hamilton,* 224 U. S. 243, 32 Sup. Ct. 415, the law has been settled that, with certain exceptions, where a receiver by virtue of the laws of the

State in which he is appointed becomes a quasi-assignee for and representative of creditors for the enforcement of the liability of stockholders in an insolvent corporation, he is vested with a right of action in their behalf and charged with the enforcement of their rights, and that the denial to him of a right to sue in the courts of another State would be a violation of § 1 of Article Fourth of the United States Constitution, requiring that full faith and credit should be given in each State to the public acts, records, and judicial proceedings of every other State. This right the foreign receiver has, not by reason of any extra-territorial effect of the laws and judicial proceedings of the State of his appointment, but because by those laws and proceedings he has within that State become vested with a certain right, and when he sues in another State, he is "seeking to enforce, for the benefit of his *cestuis que trustent*, a right of action, transitory in character, against one who was liable contractually and severally, if at all." *Converse* v. *Hamilton*, supra, p. 257. In situations where the principles announced in these decisions apply, little purpose is served in seeking earlier authority.

The Supreme Court of the United States, which must be the final authority as regards the applicability of the section of the United States Constitution referred to, has not definitely determined whether those principles apply as regards such an officer as the plaintiff in the assertion of the right he claims in this action; but that such a right accrues to him by the very terms of the statutes which create it, rather than by the intermediary of court action, does not in our judgment justify a distinction. *Gile* v. *Duke*, 5 Fed. (2d) 952; *Broderick* v. *American General Corporation* (U.S.C.C.A., 4th Circuit), 71 Fed. (2d) 864; *Broderick* v. *Stephano*, 314 Pa. St. 408, 171 Atl. 582; *Hirning* v.

*Hamlin,* 200 Iowa 1322, 1326, 206 N. W. 617; *Duke* v. *Olson,* 240 Ill. App. 198; and see *Relfe* v. *Rundle,* 103 U. S. 222, 225. We are aware that the Supreme Court of Tennessee has reached the conclusion that the New York statutes may not be enforced in the courts of that State, largely upon the ground that the vesting in the superintendent of banks of the power to determine the necessity and amount of the assessment, which it regarded as essentially judicial acts, contravened the public policy of that State; but for the reasons we have given, we cannot follow that decision.

The provisions of the New York statutes do not make the right of the superintendent of banks to enforce an assessment made by him such a special remedy as would permit our courts to decline to entertain an action by him. *Duke* v. *Olson, supra,* p. 201. The situation before us is not like that presented in such cases as *Hale* v. *Allinson,* 188 U. S. 56, 23 Sup. Ct. 244; *Finney* v. *Guy,* 189 U. S. 335, 23 Sup. Ct. 558; *Erickson* v. *Nesmith,* 86 Mass. (4 Allen) 233; *Bank of North America* v. *Rindge,* 154 Mass. 203, 27 N. E. 1015, and other cases cited by the defendants as invoking special remedies enforcement of which was refused in the courts of another State. In addition to the Federal statutes giving a similar right to the comptroller of currency as regards a national bank, those of a number of other States contain similar provisions, as appears from the cases we have cited. It is true that we do not in this State impose a liability to pay creditors of a corporation upon its stockholders except in the case of telegraph, telephone and electric light or power companies; General Statutes, § 3827; but our courts have nevertheless not hesitated to entertain suits to enforce a liability for such assessments imposed by the laws of another State under which the corpora-

tion was organized. *Fish* v. *Smith,* 73 Conn. 377, 47 Atl. 711; and see *Lewisohn* v. *Stoddard,* 78 Conn. 575, 63 Atl. 621; *Converse* v. *Aetna National Bank,* 79 Conn. 163, 64 Atl. 341, 82 Conn. 702, 76 Atl. 1117; *Bidwell* v. *Beckwith,* 86 Conn. 462, 85 Atl. 682. It is true that these cases all involved actions by foreign receivers based upon court proceedings; but, as we have pointed out, the New York statute establishes a valid procedure and it does not in our judgment make any essential difference whether the officer seeking to enforce such a liability derives his authority directly from the statutes or indirectly from them through the intervention of the courts.

Even were the matter one of comity, it would not be a sufficient reason for our courts to decline to enforce the right because under our laws no similar right exists. "It is further strongly urged that the provisions of the New York law are contrary to our public policy, and the dissimilarities in the statute provisions of the two States are pointed out in detail. These do not establish a contravention of our public policy. Dissimilar provisions are to be expected, but even if a foreign law gives a right that ours does not, or bases the right upon a different theory of justice, it in no way establishes that we are right and the foreign State wrong. We are not at liberty to refuse the enforcement of the foreign law in order to suit our own view of what is fair and right under the stated circumstances. Our courts 'do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal'. *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 111, 120 N. E. 198." *Reilly* v. *Pepe Co.,* 108 Conn. 436, 446, 143 Atl. 568. While in the view we take of the case, it is not material whether the courts of New York

would refuse to enforce such a liability upon residents of that State arising under the laws of another State as did that involved in this action, we do not find sanction in their decisions for a conclusion that they would refuse to do so. *Howarth* v. *Angle,* 162 N. Y. 179, 56 N. E. 489; *Shipman* v. *Treadwell,* 200 N. Y. 472, 93 N. E. 1104. In *Stratton* v. *Bertles,* 238 App. Div. (N. Y.) 87, 90, it is said: "The cases in which the Court of Appeals of this State has refused to take jurisdiction of suits in this forum under foreign statutes fixing some sort of liability on stockholders, involve very extreme statutes, such as that interpreted in *Marshall* v. *Sherman,* 148 N. Y. 9 [42 N. E. 419]."

It should be remembered that each of these defendants by becoming a stockholder in the bank entered into a relationship contractual in its nature, and that the provisions of the statutes of New York governing his obligations as a stockholder entered into that contract. *Fish* v. *Smith, supra,* p. 380; *Converse* v. *Aetna National Bank,* 79 Conn. 163, 169, 64 Atl. 341; *Ball Electric Light Co.* v. *Child,* 68 Conn. 522, 525, 37 Atl. 391; *Bernheimer* v. *Converse,* 206 U. S. 516, 529, 27 Sup. Ct. 755; *Howarth* v. *Angle,* 162 N. Y. 179, 187, 56 N. E. 489; *Van Tuyl* v. *Schwab,* 174 App. Div. (N. Y.) 665, 668, affirmed 220 N. Y. 661, 116 N. E. 1081. The obligation growing out of this contractual relationship included any lawful liability of a stockholder created by those statutes to respond to calls in order to meet the claims of creditors in the manner provided by the law. *Shriver* v. *Woodbine Savings Bank,* 285 U. S. 467, 476, 52 Sup. Ct. 430; *Hirning* v. *Hamlin,* 200 Iowa 1322, 1326, 206 N. W. 617; *Duke* v. *Olson,* 240 Ill. App. 198, 204. This contractual relationship was voluntarily assumed by each of the defendants when he became a stockholder in the company. Stockholders resident in this State suffer no loss

which those resident in New York do not suffer and are subject to no liability which is not equally imposed upon stockholders in New York.

The statutes of New York vested in the plaintiff the right to recover the assessment; having in himself that right, no specific authority to bring an action to assert it in a foreign jurisdiction was necessary. *Good v. Derr*, 46 Fed. (2d) 411, 414. No rights of local creditors against assets of the corporation are in question. The plaintiff had the right, upon proper pleading and proof, to enforce the liability of the defendants to pay the assessment in our courts, and the trial court erred in ruling to the contrary.

It becomes necessary, therefore, to discuss certain other grounds of demurrer. The statute provides that, when the superintendent has taken possession of the property and business of a bank, the time to present claims has expired and he has determined from his examination of its affairs that the reasonable value of the assets of the bank is not sufficient to pay its creditors in full, he may enforce the individual liability of the stockholders. The section of the statute authorizing him to do so concludes as follows: "In any such action, the written statement of the superintendent, under his hand and seal of office, reciting his determination to enforce the individual liability, or any part thereof, of such stockholders, and setting forth the value of the assets of such corporation and the liabilities thereof, as determined by him after examination and investigation, shall be presumptive evidence of such facts as therein stated." Banking Law of New York, § 80. The complaint, aside from setting up the relevant provisions of the New York statute, and alleging the ownership of shares of stock in the corporation by the various defendants and the taking possession of its business and property by the

plaintiff, states that, pursuant to the statute, subsequent to June 29th, 1931, and before July 1st, 1932, after an examination of its affairs, he had determined and ascertained that the reasonable value of its assets was not sufficient to pay its creditors in full, that there was due and owing to its creditors over and above the reasonable value of such assets a sum in excess of $30,000,000, that this insufficiency of assets had since continued, that an assessment of $25 against each shareholder for each share of stock held by him was necessary to provide money to pay the sums due its creditors, and that he had issued a written statement under his hand and seal of office reciting his determination to enforce the liability and setting forth the value of the assets of the bank and its liabilities as determined by him, a copy of this statement being annexed to the complaint. One ground of demurrer is that the complaint does not allege that there was an insufficiency of assets, but only that the plaintiff had determined that there was.

In *Cheney* v. *Scharmann,* 145 App. Div. (N. Y.) 456, decided in 1911, the court construed the provisions of the banking laws concerning the liability of stockholders to make contribution to pay the debts of the corporation as they then stood. They then provided that the superintendent of banks "may, if necessary to pay the debts of such corporation, enforce the individual liability of the stockholders." The court held that mere proof that the superintendent had determined that it was necessary to enforce the liability of stockholders was insufficient to show a cause of action, that it was necessary for him to establish by evidence the necessity for its enforcement. The present law was enacted as a part of a general revision of the banking law of New York made in 1914, evidently with the purpose of avoiding the necessity of proof

required under the decision of *Cheney* v. *Scharmann,* supra. In *Broderick* v. *Aaron,* 272 N. Y. Sup. 219, 232, it is said that the banking law of the State was revised "to conform generally our scheme of bank regulation, liquidation, and assessment enforcement to the statutory system applicable to national banks conducted through the comptroller of currency. . . . The test of the accrual of the cause of action laid down by the Federal courts should therefore control." In *Broderick* v. *Adamson,* 265 N. Y. Sup. 804, 822, Justice Lydon, adopting the same view, expressed his opinion that the certificate, in the absence of a showing of fraud, illegality, bad faith, or obvious error, constituted conclusive evidence of the facts therein stated. While the Federal statute contains the same language as that of the New York statute before its revision, the construction which has been given to it is thus stated in *Liberty National Bank* v. *McIntosh,* 16 Fed. (2d) 906, 909: "The decisions of the comptroller of the currency are not subject to collateral attack, nor is his assessment against shareholders, and the amount thereof open to review; but, on the contrary, neither the bank nor the shareholders, clearly in the absence of fraud charged and proved, are entitled to a judicial determination of any question involved in his decision either as to the solvency, the sums due creditors and the amount of the assessments as ordered, such matters one and all being conclusively within the judgment and discretion of the comptroller, and as to which he acts in a quasi-judicial capacity." *Kennedy* v. *Gibson,* 75 U. S. (8 Wall.) 498, 505; *Casey* v. *Galli,* 94 U. S. 673; *Studebaker* v. *Perry,* 184 U. S. 258, 22 Sup. Ct. 463; and see *Davis* v. *Moore,* 130 Ark. 128, 139, 197 S. W. 295. In *Broderick* v. *American General Corporation* (United States Circuit Court of Appeals, Fourth Circuit), 71 Fed. (2d) 864, the two New York cases we

have cited were deemed sufficient to establish an authoritative interpretation of the New York statute. The construction thus placed upon the provision in question goes far beyond any judicial interpretation of the words "presumptive evidence" that we have been able to find; *People* v. *Deluce*, 237 Ill. 541, 547, 86 N. E. 1080; *McGinty* v. *Brotherhood of Railway Trainmen*, 166 Wis. 83, 91, 164 N. W. 249; *State* v. *Simon*, 163 Minn. 317, 319, 203 N. W. 989; *Fightmaster* v. *Mode*, 31 Ohio App. 273, 287, 167 N. E. 407; *State* v. *Intoxicating Liquors*, 80 Me. 57, 61, 12 Atl. 794; and we cannot avoid a serious question whether a like conclusion will be reached should the matter come before the Court of Appeals of New York. But, granted that the effect of the statute is to give to the certificate of the superintendent the weight attributed to it in these decisions, the question remains as to its effect in an action brought before the courts of another State.

The ascertainment of the necessity for an assessment is by the statute made a condition of the right of the superintendent to enforce the liability of stockholders but the statute nowhere in terms makes his determination of that fact conclusive. Indeed, if that were the intent, the concluding sentence of the section, making his certificate "presumptive evidence" of the facts stated in it, seems peculiarly inapt. Nor would it be necessary to go so far in order to remedy in large part the difficulties of proof presented by the decision in *Cheney* v. *Scharmann*, *supra*. In none of the cases we have cited has the determination of the superintendent been given a conclusive effect. Thus in the *Adamson* case the certificate, despite the weight which the Justice thought ought to be attributed to it, is still spoken of as evidence rather than as a final determination of the facts

stated in it; it is only conclusive "in the absence of
. . . fraud, illegality, bad faith, or obvious error;" and
it is to be noted that in that case the effect of the
statute was admittedly not presented by the issues and
the expression of opinion by the Justice is the merest
*obiter*. In *Broderick* v. *Aaron*, 264 N. Y. Sup. 15, 17,
the superintendent of banks alleged, upon information
and belief, that an insufficiency of assets existed, and
in discussing the claim that the pleading alleged merely
a conclusion of law, the court said: "The complaint
does not allege mere insolvency, but by stating that
the liabilities exceed the assets by a sum in excess of
$30,000,000 it establishes a basis for a demand of a
ratable contribution by the stockholders in a sum at
least equal to the par value of their stock. No possi-
bility of surprise or hardship is imposed upon the
stockholders. They may obtain a full statement by
bill of particulars of the assets and liabilities so as to
be able to challenge the contention of the superintend-
ent of banks that a deficiency exists." In *Broderick*
v. *Betco Corporation*, 267 N. Y. Sup. 139, in discussing
a claim of the defendants that the plaintiff had failed
to establish a prima facie case that the stock assess-
ment was necessary to pay creditors of the bank, the
court said that the proof adduced by the plaintiff was
clearly sufficient to make out a cause of action, that
the certificate of the superintendent was by the terms
of the statute presumptive evidence of the facts therein
stated; it then quoted so much of the *Adamson* deci-
sion as follows: "Under the statute plaintiff is entitled
to rest upon the certificate alone, and should not be
required as a part of his case to justify the facts therein
stated. . . . To hold the contrary would clearly im-
pair or destroy the presumption and circumvent the
plain purpose of the statute;" and the court went on
to say that even apart from the certificate the evidence

introduced by the plaintiff was sufficient to put the defendant to its proof.

It is true that in *Broderick* v. *American General Corporation,* supra, p. 870, the court stated: "The statute gives a cause of action for the amount of the assessment made against each stockholder, not for the amount which the court may deem necessary to meet the bank's indebtedness." If by this statement the court meant that the cause of action was based upon the determination of the necessity and amount of an assessment by the superintendent of banks, as it would be upon a judgment of a court where the right to collect such an assessment was vested in a receiver appointed by it, rather than upon the fact that an assessment made by the superintendent was in fact necessary, of which his certificate had merely evidential value, however weighty in effect it might be, the court is clearly going beyond the actual decisions in the New York courts; but we doubt if that was the intent of the decision, because the court proceeds to discuss the clause of the statute making the certificate of the superintendent of banks presumptive evidence, and says: "But we think by this sentence it was intended to make clear that the certificate of the superintendent should be accorded that presumption of correctness which attaches to official acts of administrative officers, not to detract from the strength of the presumption which would attach to it in the absence of statute." Certainly the New York decisions in which the effect of the clause of the statute in question has been directly involved do not authoritatively construe it as making the certificate of the superintendent conclusive as to the necessity of the making of an assessment and as to its amount, but rather the contrary. Our conclusion is that the certificate of the superintendent of banks is made by the statute at most evidence of the

necessity of the assessment and of its amount and that in an action to enforce an assessment made by him these questions present issues for the determination of the court. The ground of demurrer that the complaint failed to allege that there was in fact such an insufficiency of assets as made an assessment against the stockholders necessary was properly sustained by the trial court.

This brings us to a consideration of the effect to be given the provision of the statute making the certificate presumptive evidence in an action in our courts. The ordinary rule is that where a cause of action arising in another State is asserted in our courts, we look to the laws of that State to determine all matters of substance involved in it, but that matters of procedure are governed by our own law, and among these are, of course, our rules of evidence. *New England Fruit & Produce Co.* v. *Hines,* 97 Conn. 225, 228, 116 Atl. 243. In this case we said that the burden of proof is often more than a matter of procedure and, quoting from *Central Vermont Ry. Co.* v. *White,* 238 U. S. 507, 511, 35 Sup. Ct. 867, that there is "no doubt of the general principle that matters respecting the remedy—such as the form of action, sufficiency of the pleadings, rules of evidence . . . —depend upon the law of the place where the suit is brought . . . but matters of substance and procedure should not be confounded because they happen to have the same name." The *Central Vermont Railway* case dealt with the burden of proof upon the issue of contributory negligence and held that in those jurisdictions where it is incumbent upon the plaintiff to allege and prove lack of contributory negligence, proof of this fact by the plaintiff "was a part of the very substance of his case." We have found the nature of those procedural matters established under the laws of one State which are to be

given effect by the courts of another, nowhere better stated than in *Precourt* v. *Driscoll,* 85 N. H. 280, 157 Atl. 525, where it is said (p. 282): "But when the remedial law of the foreign jurisdiction is so associated and incorporated with its substantive law as to be necessary in order to maintain and validate it, a question of difficulty is presented. If the local remedy results in destroying or altering the foreign cause of action, the ends of comity are not only defeated but rights are given or liabilities imposed in respect to a foreign transaction affecting its legal character. One way to avoid such a result is to take no jurisdiction, as was done in *Crippen* v. *Leighton,* 69 N. H. 540 [44 Atl. 538]. The other way is to make an exception to the rule applying the local law when the foreign remedy is so inseparable from the cause of action that it must be enforced to preserve the integrity and character of the cause and when such remedy is practically available. The vindication of substantive rights should not mean their loss or alteration, and when no local policy is adversely affected, strict adherence to a rule which becomes arbitrary and works injustice in a given case may well be dispensed with." The presumption established by the statute does not fall within that class of matters ordinarily regarded as remedial yet which are so much of the substance of the right that they should be given effect in a foreign jurisdiction. *Fish* v. *Smith,* 73 Conn. 377, 393, 47 Atl. 711; *Johnson* v. *Chicago & N. W. Ry. Co.,* 91 Iowa, 248, 59 N. W. 66; *Smith* v. *Wabash R. Co.,* 141 Ind. 92, 105, 40 N. E. 270; *Jones* v. *Chicago, St. P., M. & O. Ry. Co.,* 80 Minn. 488, 83 N. W. 446; *Musser* v. *McRae,* 38 Minn. 409, 38 N. W. 103; *Pennsylvania Co.* v. *McCann,* 54 Ohio St. 10, 42 N. E. 468; *Aetna Life Assurance Society* v. *Frommhold,* 75 Ill. App. 43, 53. The provision of the New York statute making the certificate of the

superintendent of banks presumptive evidence of the facts therein stated has no application to an action brought by him to enforce the liability of stockholders in this State.

Two other grounds of demurrer are closely related. One is that it does not appear what assets, if any, the plaintiff has received between the time the assessment was made and the bringing of the action, and hence that, at the latter time, the assets were insufficient to take care of the obligations of the bank; and the other is that under the allegations of the complaint it appears that the affairs of the bank are still in process of liquidation and that no liability can attach to the defendants until liquidation is completed. The statutes, in giving the plaintiff the right to levy the assessments when he has actually ascertained that a deficiency of assets exists, clearly mean that the insufficiency is to be determined as of the time the assessment is made, and if it then exists, the superintendent of banks is authorized to enforce the liability of stockholders. See *Broderick* v. *Aaron,* 272 N. Y. Sup. 219, 230. If later other assets are secured by him, so that the assessment in whole or in part proves to be unnecessary, as we have pointed out, the assets in his hands come back to the stockholders. That it is not necessary to wait until the liquidation of the affairs of the bank has been completed is expressly held by the Supreme Court of New York in *Broderick* v. *Betco Corporation,* 267 N. Y. Sup. 139, a construction of the law in which we concur.

It is provided in the statute that no person who has in good faith, and without any intent to evade his liability as stockholder, caused his stock to be transferred on the books of the bank when such bank is solvent to any resident of New York, of full age, previous to any default in the payment of any debt

or liability of the bank, shall be subject to any personal liability for the debts of the bank. The defendants contend that this provision indicates an intent to make the law applicable only to residents of New York. We do not so construe it. A stockholder resident in another State might equally with a stockholder resident in New York have the advantage of this provision by such a transfer of his stock as is described to a resident of the latter State, and a resident of New York might lose the benefit of the provision by transferring his stock to a resident of another State. Very likely the legislature intended by this provision to make the liability established by the statute easier to enforce by not releasing the liability of a stockholder resident in New York who transferred his stock to a resident of another State. But in these days of the broad dissemination of corporate stock, the terms of this provision are too weak a basis for the conclusion which the defendants seek to draw from them.

There remains only for discussion the claim of the defendants that there has been an improper joinder of parties in that the plaintiff is seeking several judgments against each of the defendants upon a distinct cause of action. In *Evergreen Cemetery Association* v. *Beecher,* 53 Conn. 551, 552, 5 Atl. 353, the plaintiff, seeking to condemn certain land for a cemetery, was permitted to join as defendants the owners of several distinct parcels of land, and we said: "But we think that it is in harmony with our practice in analogous proceedings and with the spirit of the Practice Act, and that it promotes speedy, complete, and inexpensive justice, without placing any obstruction in the way of any defendant in protecting his rights. Each carries his own burden only; he is not made to carry that of any of his associates. Therefore the complaint, so far forth as this objection is concerned, is sufficient."

In *Fairfield* v. *Southport National Bank,* 77 Conn. 423, 59 Atl. 513, the plaintiff brought an action to secure the cancellation of a number of promissory notes improperly transferred, after they had been paid by a bank, which was the payee of each, to the several defendants, and we held that the various holders of the notes might be joined as defendants, saying (p. 428): "The defendants thus have each an interest in having these claims of the plaintiff decided adversely to the plaintiff, and their interest is a pecuniary one. The word 'controversy' is exceedingly broad and comprehensive, and for that reason not easily susceptible of any precise general definition; and no attempt will be made here to give it any such definition. It is enough to say that we think that the word, as applied to the present case, means the adverse claims of the parties with respect to the ownership of, the liability upon, and possession of, said twenty notes set forth in the complaint. If this be so, it follows that each defendant, as between such defendant and the plaintiff, has an interest adverse to the plaintiff in the whole or in some part of the controversy, and thus in terms at least comes within the class which may be made defendants under the statute." See also *McGowan* v. *Milford,* 104 Conn. 452, 133 Atl. 570. To compel the plaintiff to bring a separate suit against each of these defendants would not be in the public interest, because of the heavy burden it would put upon the courts and their officers. The joinder of all the defendants in one suit does not prevent each making any defense peculiar to himself nor is it a sound objection that many separate and distinct issues may be closed between the parties and that separate trials may become necessary to determine them. *Lewisohn* v. *Stoddard,* 78 Conn. 575, 604, 63 Atl. 621. There is no misjoinder.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.